Johannes K. HUYEN, Appellant,

v.

Andy DRISCOLL, City of St. Paul, Respondents.

Nos. C2–91–304, C5–91–667.

Court of Appeals of Minnesota.

Dec. 24, 1991.

Review Denied Feb. 10, 1992.

Daniel R. Shulman and Timothy M. Burke, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, for Johannes K. Huyen, appellant.

Clifford M. Greene and William J. Everett, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for Andy Driscoll, respondent.

Elmer B. Trousdale, Michael J. Vanselow and Peggy A. Gunn, Oppenheimer, Wolf & Donnelly, St. Paul, for City of St. Paul, respondent.

Considered and decided by SHORT, P.J., and RANDALL and LOMMEN *, JJ.

## OPINION

SHORT, Judge.

This matter arose from the 1985 study of the St. Paul Human Rights Department and the subsequent resignation of that department's director, Dr. Johannes K. Huyen. Huyen sued the city and commission member Andrew Driscoll, alleging seven statements in a report were defamatory and caused an intolerable work environment. A jury awarded Huyen $1.5 million for his defamation claim and $300,000 for his constructive discharge claim. Respondents made motions for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The trial court granted JNOV on the grounds that (a) there was not clear and convincing evidence the statements were published with actual malice, (b) the report contained

---

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

statements of opinion, not fact, and (c) Huyen's claim of constructive discharge is dependent on a valid defamation claim and unavailable to an at-will employee.

Huyen appealed the judgment entered on the order granting respondents JNOV. Respondents moved for dismissal and remand for a ruling on their alternative new trial motions. We denied respondents' motion to dismiss, but remanded for a ruling on the new trial motions. Due to the retirement of the trial judge, the new trial motions were considered by a different judge. That trial court granted respondents' motion for a new trial under Minn. R.Civ.P. 63.01 because it could not assess the weight of evidence or possible impact of alleged errors. Huyen also appeals that decision, and his two appeals have now been consolidated.

## FACTS

Huyen was the director of the St. Paul Human Rights Department (department) from 1980–1986. In February of 1984, the St. Paul Human Rights Commission (commission) appointed a three-member committee, including Driscoll, to study the department.

The committee conducted interviews with present and former department employees, the Mayor, other city employees in contact with the department, commission members and members of other human rights departments. In addition, a questionnaire was sent to all department employees. These materials formed the basis of the committee's report. The report contained favorable and critical information and conclusions about the department and the commission. Soon after this report was released, the Mayor asked Huyen to resign. Huyen returned to his previous position with the department.

## ISSUES

1. Did the trial court err in determining three statements were critical of the agency's procedures and not comments about Dr. Huyen?

II. Did the trial court err in finding no actual malice by the city or Driscoll?

III. Did the trial court err in concluding the other statements in the report were constitutionally protected free speech?

IV. Did the trial court err in granting JNOV on the constructive discharge claim?

## ANALYSIS

The trial court's granting of JNOV is a question of law subject to *de novo* review. *Diesen v. Hessburg*, 455 N.W.2d 446, 449 (Minn.1990), *cert. denied*, ── U.S. ──, 111 S.Ct. 1071, 112 L.Ed.2d 1177 (1991); *Edgewater Motels, Inc. v. Gatzke*, 277 N.W.2d 11, 14 (Minn. 1979). JNOV is proper when the findings of the jury are contrary to applicable law. *Diesen*, 455 N.W.2d at 452; *Dean v. Weisbrod*, 300 Minn. 37, 42, 217 N.W.2d 739, 742–43 (1974).

Huyen maintains the trial court erred in granting JNOV for respondents on his defamation and constructive discharge claims, alleging Driscoll's malicious, slanderous statements were actionable. We disagree. The trial court properly granted JNOV even if the report contained defamatory statements because the statements (a) were made without actual malice, and (b) were non-actionable opinions. Further, three of the statements submitted to the jury were about the Department, not Huyen. Because there is no valid defamation action, the trial court properly granted JNOV on Huyen's constructive discharge claim.

### I.

Huyen claims he was defamed by Driscoll and the city based upon seven statements contained in the Human Rights Commission's report. However, three of those statements are general criticisms of government procedures and policies.

Questionnaires confirmed interview comments repeatedly offered by a majority of staff that *departmental meetings are irregular and infrequent, and generally unsolicitive* of staff observations and opinion;

\*  \*  \*  \*  \*  \*

It is clear to the committee that the *current environment within the Department is non-conducive to problem resolution and that the overall mission of the Department is lost in a cloud of hostility and divisiveness*, undermining cooperation and serving as a disincentive to progressive operations.

\* \* \* \* \* \*

The Committee finds, too, that the *policy* forbidding staff attendance at in-house workshops conducted by Employee Relations *was ill-considered*. Though taken during the workday, the long-term benefits of such job-related subject areas as "Stress Management," "Conflict Resolution," and "Dealing with an Irate Public" would appear to outweigh the temporary loss of hours resulting from participation.

(Emphasis added.)

■■■ For a defamatory statement to be actionable, it must first be about the plaintiff. *Stock v. Heiner*, 696 F.Supp. 1253, 1259 (D.Minn.1988). Huyen argues that because he was in charge of the criticized agency, everyone would assume these criticisms were directed at him. It is well settled that a public official cannot maintain a defamation action solely because of his association with the government agency being criticized. *See New York Times v. Sullivan*, 376 U.S. 254, 289–92, 84 S.Ct. 710, 731–32, 11 L.Ed.2d 686 (1964). The above-listed statements involve criticism of government, not personal criticism of Huyen. Under these facts, the three statements cannot support Huyen's claim of defamation.

### II.

Huyen agrees he is a public official and thus must show publication with actual malice by clear and convincing evidence. *New York Times*, 376 U.S. at 285–86, 84 S.Ct. at 729; *Diesen*, 455 N.W.2d at 452. Whether there is sufficient evidence to support actual malice is a question of law. *Milkovich v. Lorain Journal Co.*, — U.S. —, —, 110 S.Ct. 2695, 2705, 111 L.Ed.2d 1 (1990); *Harte–Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 671, 109 S.Ct. 2678, 2694, 105 L.Ed.2d 562 (1989).

■■■ Huyen argues Driscoll and the city were biased against him and the report reflects that bias. However, ill will towards Huyen is insufficient to establish actual malice. *Diesen*, 455 N.W.2d at 453. " 'Motives of diminishing [appellant's] credibility' do not establish actual malice" without actual knowledge of falsity. *Id.* Huyen failed to show Driscoll or the city knew the information was false or had reckless disregard for its truth or falsity. The record demonstrates the committee had some basis for each of the statements in the report. That the report emphasized critical rather than positive information is insufficient to establish actual malice.

### III.

The first amendment of the United States Constitution protects some speech from state defamation actions. *New York Times Co.*, 376 U.S. at 283, 84 S.Ct. at 727. Relying on *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), federal circuit courts have held statements of opinion are absolutely protected under the first amendment. *See Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1302 (8th Cir.1986), *cert. denied*, 479 U.S. 883, 107 S.Ct. 272, 93 L.Ed.2d 249 (1986); *Ollman v. Evans*, 750 F.2d 970, 975 (D.C.Cir.1984), *cert. denied*, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985). To distinguish a protected statement of opinion from an actionable statement of fact, the appellate courts consider four factors:

(1) the statement's precision and specificity;

(2) the statement's verifiability;

(3) the social and literary context in which the statement was made; and

(4) the statement's public context.

*Janklow*, 788 F.2d at 1302–03.

■■■ The United States Supreme Court recently determined freedom of expression "is adequately secured by existing constitutional doctrine without the creation of an artificial dichotomy between 'opinion' and fact." *Milkovich, supra*, — U.S. at —,

110 S.Ct. at 2706. After stating that the appellate courts' fact/opinion analysis mistakenly relied on dicta in *Gertz*, the Court said all statements of opinion are not automatically protected by the first amendment. *Id.* at ——, ——, 110 S.Ct. at 2705, 2707. Citing existing law, the Court clarified that only statements regarding matters of public concern which are not sufficiently factual to be capable of being proven true or false, and statements which cannot be reasonably interpreted as stating actual facts, are absolutely protected by the first amendment. *Id.* at ——, 110 S.Ct. at 2706–07. Thus, contrary to Huyen's argument, *Milkovich* did not abolish constitutional protection for opinions, but instead merely narrowed the privilege.

The test used in *Milkovich* to identify protected opinions is very similar to the four-factor inquiry used by the circuit courts to distinguish fact from opinion. Specificity and verifiability are closely related to whether a statement is capable of being proven false. Whether a remark can be reasonably interpreted as stating actual facts must be inferred from the political, literary, and social context in which the statement was made. Given the similarity between the Supreme Court's definition of protected opinion and the circuit courts' fact/opinion analysis, decisions applying the *Janklow* test are still instructive under *Milkovich*.

Accordingly, the trial court's reliance on our cases which follow *Janklow* to evaluate the statements in the present case does not automatically require us to reverse the grant of judgment notwithstanding the verdict. The trial court held the statements were opinions because they were not specific, could not be readily verified, and could not be understood as facts in the social and public context in which they were made.

▮ Huyen argues the statement about the ideal qualifications for the director of the department was critical of him personally. We disagree.

> The committee finds that the record of performance and attendant data acquired through interviews, meetings and documentation with respect to the current Director of the Department provide sufficient evidence to recommend that a person who understands and is sensitive to: community outreach, legislative requirements, communication and interpersonal relations should be in the directorship. The Director should possess a strong background of skills and experience in management, including personnel issues, reporting relationships and budget design.

This statement represents the committee's concept of an ideal director. While it is specific in description, the committee's evaluation of an ideal director is not capable of being proven false.

▮ Huyen also argues two statements concerning his level of accountability and exercise of discretion in discrimination cases are actionable.

> The Committee finds that although there is statutory language defining the Director's reporting relationship to the Mayor and the Commission, there is, in practice, an insufficient level of accountability to either, resulting in frustration and an unacceptable lack of awareness of departmental activity.

> \*     \*     \*     \*     \*     \*

> Incident of discrimination meriting a "Director's Charge" under SPLC Chapter 183.16 should be given equal weight and initiated promptly.

> Under the ordinance, the Director may, "on his own motion," initiate an investigation of possible violation.

> The Committee finds that the Director has unevenly and selectively employed the "Director's Charge." He has filed charges when appropriate, but has passed over opportunities to do so at other times, declaring publicly that victims of discrimination may only seek relief by filing charges themselves.

We do not view these statements as actionable. In *Milkovich*, the defamatory statements at issue could be objectively verified by comparing two hearing transcripts to determine if Milkovich committed perjury. *See Milkovich* at ——, 110 S.Ct. at 2707.

Here, it is impossible to verify objectively Huyen's level of accountability or his uneven use of authority. Even if the statements are hybrid statements containing both opinion and underlying facts, the statements still cannot be proven false because "when all the underlying predicate facts are considered, with all their conflicting inferences, the statement is not provable one way or the other." *Diesen*, 455 N.W.2d at 456 (Simonett, J., concurring specially). Since the statements cannot be proven true or false, they are absolutely protected. *See Milkovich*, —— U.S. at ——, 110 S.Ct. at 2706.

■■■ Finally, Huyen argues the statement about his "willingness to participate" was defamatory:

> The Committee also finds that the Director's unwillingness to fully participate in the work of the interdepartmental task force charged with implementing the City's new affirmative action program was a factor in the decision not to house the function in Human Rights.
>
> \*   \*   \*   \*   \*   \*
>
> The Director should institute efficient methods of gathering, storing and updating statistical monitoring data so as to be abreast of accurate information regarding protected class representation levels in all city departments.

The statement is not capable of proof because it was an evaluation by the committee based on its own expectations of an ideal director.

All of these statements were contained in a report, the sole purpose of which was to measure subjectively the government's performance in the human rights arena. The report states clearly that it is a "collection of ideas and conclusions, not facts." As the trial court correctly noted, a reader of the report would expect the statements to convey impressions and evaluations, not facts. The statements in the report were non-actionable opinions.

## IV.

■■■ Huyen asserts the trial court erred in granting JNOV on his constructive discharge claim. We disagree. Construc-

tive discharge occurs where an employee resigns in order to escape intolerable working conditions. *Continental Can Co. v. State*, 297 N.W.2d 241, 251 (Minn.1980). Thus, in order to establish a constructive discharge claim Huyen must demonstrate the city and Driscoll created a working environment that was more than just unpleasant. "An employer constructively discharges an employee only if it 'makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'" *Bartman v. Allis–Chalmers Corp.*, 799 F.2d 311, 314 (7th Cir.1986) (quoting *Young v. Southwestern Savings & Loan Assoc.*, 509 F.2d 140, 144 (5th Cir.1975)). Criticism encountered on a public official's job is not sufficient to establish a constructive discharge.

■■■ Even if the record supported the conclusion that Huyen's working conditions were intolerable, the trial court properly granted JNOV to respondents. First, a discharge claim can only be brought against one's employer. *Muller v. United States Steel Corp.*, 509 F.2d 923, 929 (10th Cir.1975), *cert. denied*, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975). Driscoll was not Huyen's employer. Second, constructive discharge is a companion tort. *Barrett v. Omaha Nat'l Bank*, 726 F.2d 424, 428 (8th Cir.1984). In order to maintain that tort, Huyen must establish the underlying illegality. For the reasons stated above, Huyen has failed to establish defamation by respondents. Under these facts, the trial court properly granted JNOV on Huyen's constructive discharge claim.

The city argues it is immune from liability under Minn.Stat. § 466.03, subd. 6 (1984). Huyen argues the trial court applied the wrong standard in granting a new trial motion. Because of our disposition on the merits of the case, it is unnecessary for us to address these issues.

## DECISION

The 1985 study contained no statements of fact about Huyen. Further, there is no clear and convincing evidence of publica-

tion with actual malice. Under these circumstances, the trial court properly granted JNOV for respondents.

*Affirmed.*