**Gene A. SNESRUD, Appellant,**

v.

**INSTANT WEB, INC., Respondent.**

**No. CX–91–1815.**

Court of Appeals of Minnesota.

April 21, 1992.

Review Denied June 17, 1992.

Douglas A. Hedin, Minneapolis, Minn., for appellant.

Joan M. Thieman, David A. Cossi, Barna, Guzy & Steffen, Ltd., Coon Rapids, Minn., for respondent.

Considered and decided by NORTON, P.J., and AMUNDSON and MULALLY,* JJ.

## OPINION

AMUNDSON, Judge.

Appellant Gene Snesrud seeks review of the trial court's denial of his wrongful discharge action against his former employer, Instant Web. Snesrud alleges he was discharged in retaliation for seeking workers' compensation benefits, in violation of Minn. Stat. § 176.82 (1986). The trial court found for Instant Web and Snesrud alleges three errors on appeal: (1) the trial court erred in refusing to permit a jury trial; (2) the trial

court applied the wrong standard of proof to the evidence and erred in failing to apply the *McDonnell–Douglas* test; and (3) the trial court's findings are not supported by the evidence. We affirm.

## FACTS

Gene Snesrud began employment with respondent Instant Web in 1976. During his employment, Snesrud received mixed performance reviews, and at times, he was warned that his performance should improve. Snesrud admits he had performance problems. Snesrud suffered a work-related repetitive motion injury and was permanently partially disabled by one-half of one percent (.5%) according to his doctor.

Employee performance in Snesrud's position at Instant Web was measured by a percentage standard. Company officials testified that 100% was a "minimum" performance level. Snesrud's performance evaluations indicate he generally was at or above 100% but would fall below 100% from time to time. On November 18, 1986, Snesrud received a written warning that his production had slipped drastically, that he had been warned before, and that this warning was the "final" warning. Snesrud signed the warning indicating he concurred with the company's statement. In the performance review dated November 24, 1986, his supervisor indicated that Snesrud's production was too low. Instant Web reviewed Snesrud's performance again in March 1987 and in July 1987, indicating Snesrud's production had improved.

On October 30, 1987, Instant Web issued a written warning to Snesrud for violations of attendance and work quality. The "company statement" on the warning form stated Snesrud had a very bad work record and that during the week of October 5, 1987, his production was 40% lower than other workers running the same equipment. On November 16, 1987, Snesrud again received a written warning for low production. Instant Web suspended Snesrud for two days for the violation. On November 20, 1987,

---

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

Snesrud turned in a notification of an on-the-job injury indicating he was having pain in his back, hip and elbows when running the machine at more than 100% and that he would be seeking further treatment.

On November 23, 1987, during his next periodic performance review, Snesrud pulled down his pants and "mooned" his supervisor. The supervisor testified he did not find this incident very funny. The written portion of this review indicated Snesrud's production had dropped four points since the last review and that, with his experience, the company expected him to produce around 110%.

On November 30, 1987, Snesrud saw a doctor who stated Snesrud was "presently being evaluated" for fibrositis and that he was to "be further evaluated by a rheumatologist regarding job restrictions." On December 8, 1987, Instant Web's personnel manager asked one of Snesrud's doctors what, if any, restrictions applied to Snesrud's work. On December 16, 1987, the doctor responded that while Snesrud's regular work aggravated his condition it was unlikely he would be disabled. The physician also told Snesrud he should work full time and could reasonably be expected to maintain an output at a level equivalent to that of his peers.

On December 17, 1987, another doctor evaluated Snesrud in the workplace. On December 23, 1987, this doctor wrote a letter to Instant Web's personnel manager indicating Snesrud did have some objective, positive medical findings. The letter also stated Snesrud requested a light duty work order. Later that day, Snesrud was evaluated by another physician. This doctor wrote a prescription slip ordering that Snesrud be off work for two weeks, followed by one week at 25% capacity, then one week at 50% capacity, before he resumed full activity.

On December 18, 1987, Snesrud reported to work with doctor's orders indicating that for medical reasons, he should be off work for two weeks. He was asked to train another worker to use his machine before he left for home and Snesrud did so. He then went home.

That afternoon, Instant Web's Vice President of Manufacturing called Snesrud at home and told him he was fired, effective immediately. When Snesrud asked why he was being fired, he was told, "Well, we had a meeting of the minds today and it seems to us that you don't want to work here anymore."

On December 29, 1987, Snesrud went to Instant Web to pick up his check. He was provided with a letter dated December 29, 1987 stating, "To Whom it May Concern: Gene Snesrud was terminated from his employment on December 18, 1987 at Instant Web, Inc. for his repeated refusal to do the assigned work. Sincerely, (signed) David E. Eckblad, Vice President, Manufacturing Instant Web, Inc."

Snesrud then applied for unemployment. The Department of Jobs and Training contacted Instant Web for verification of the reasons for separation. The company reported Snesrud was terminated "for repeated refusal to do the assigned work." The company said it "always honored his doctor's directions for time off or reduced duty" but that when Snesrud's "doctor would determine Gene was capable of unrestricted duty, Gene would get a new doctor and attempt to repeat the cycle." Snesrud eventually received unemployment compensation, and, in January 1989, settled his workers' compensation claim for temporary total disability and permanent partial disability.

Snesrud then sued Instant Web for "wrongful discharge" alleging retaliation for filing workers' compensation claims, in violation of Minn.Stat. § 176.82 (1986). Snesrud's complaint also alleged emotional distress.

Snesrud's attorney agreed to pursue only the wrongful discharge action under section 176.82. Instant Web's attorney then moved the court to deny a jury trial on this claim. Snesrud's attorney vigorously opposed the motion but the trial court decided a jury trial was not required. After a bench trial, the trial court found Instant Web had many valid reasons for terminating Snesrud, and Snesrud failed to prove by clear and convincing evidence that he

was terminated for filing a workers' compensation claim, in violation of Minn.Stat. § 176.82. In its memorandum of law, the trial court stated Snesrud's filing of the notification of injury and the doctor's note on December 18, 1987 were not substantial factors in Instant Web's decision to terminate him. The court also stated Snesrud's application for workers' compensation benefits played "no part" in Instant Web's decision to fire him.

Snesrud moved for amended findings, conclusions of law and order, or, in the alternative, for a new trial by a jury. He argued (1) the trial court erred in ruling Snesrud was not entitled to a jury trial under section 176.82; (2) the court applied the wrong standard of proof and erred in refusing to apply the *McDonnell–Douglas* analysis; and (3) the trial court's findings are not supported by the evidence. The trial court denied the motion in all respects and this appeal followed.

### ISSUES

I. Did the trial court err in determining Snesrud was not entitled to a jury trial for wrongful discharge under Minn.Stat. § 176.82?

II. Did the trial court err in applying a clear and convincing standard of proof and in refusing to apply the *McDonnell–Douglas* test?

III. Did the trial court reach a decision which was clearly erroneous, in view of the evidence presented at trial?

### ANALYSIS

### I.

■ The decision whether a jury trial is required under Minn.Stat. § 176.82 is a question of law. This court is not bound by the trial court's decision as to matters of law. *A.J. Chromy Constr. Co. v. Commercial Mechanical Servs., Inc.*, 260 N.W.2d 579, 582 (Minn.1977). Section 176.82 is part of the Workers' Compensation Act (Act), Minn.Stat. ch. 176, and creates a civil action for damages. It provides:

Any person discharging or threatening to discharge an employee for seeking workers' compensation benefits or in any manner intentionally obstructing an employee seeking workers' compensation benefits is liable in a civil action for damages incurred by the employee including any diminution in workers' compensation benefits caused by a violation of this section including costs and reasonable attorney fees, and for punitive damages not to exceed three times the amount of any compensation benefit to which the employee is entitled. Damages awarded under this section shall not be offset by any workers' compensation benefits to which the employee is entitled.

Minn.Stat. § 176.82 (1986).

The "common law rule of 'liberal construction' based on the supposed 'remedial basis of workers' compensation legislation does not apply to cases under chapter 176." Minn.Stat. § 176.001 et seq. (1986). The statute defines the workers' compensation system in Minnesota as "based on a mutual renunciation of common law rights and defenses by employers and employees alike." *Id.*

The right to a trial by jury as it existed at common law is preserved by the Minnesota Constitution. Minn. Const. art 1, § 4 ("The right of trial by jury shall remain inviolate, and shall extend to all cases at law * * *.") Because workers' compensation was unknown at the time the constitution was adopted, and because the Act substituted a new, adequate and fundamentally different remedy "upon a cause of action for one for which there was originally at common law a remedy involving the right of trial by jury" the Act abolished common law actions available against employers before enactment of the law. *Breimhorst v. Beckman*, 227 Minn. 409, 434, 35 N.W.2d 719, 734 (1949). Thus there is no right to a jury trial on a workers' compensation claim.

Snesrud characterizes his cause of action as one alleging retaliatory discharge for reasons that contravene public policy. In support of his argument, Snesrud relies

largely on the decisions in *Phipps v. Clark Oil & Refining Corp.*, 396 N.W.2d 588 (Minn.App.1986), *aff'd* 408 N.W.2d 569 (Minn.1987).

In *Phipps*, the employee was discharged for refusal to violate a law. This court held that an employee terminated for refusing to violate a law has a cause of action for wrongful discharge under "a public policy exception" to the employment-at-will doctrine. *Id.* at 594. Following the employer's appeal, but before the Supreme Court issued its decision, Minn.Stat. § 181.932 was enacted. Section 181.932, subdivision 1 prohibits the discharge of an employee who refuses to engage in any activity which would violate a law. The supreme court held the statute applied retroactively to prohibit discharge of the employee. *Phipps*, 408 N.W.2d at 571.

Snesrud argues that his cause of action under section 176.82 is like an action under section 181.932 (the *Phipps* case), that a jury trial would be permissible under section 181.932, and that it should therefore be permitted in his case.

The most recent case to deal with an action for retaliatory discharge under section 176.82 is *McDaniel v. United Hardware Distrib. Co.*, 469 N.W.2d 84 (Minn. 1991). Two years and four months after being fired, the employee commenced an action under section 176.82 alleging retaliatory discharge for seeking workers' compensation benefits. The trial court held the employee's claim was barred by the two-year statute of limitation for nonpayment of wages. *See* Minn.Stat. § 541.07(5). This court held the three-year statute of limitation for an intentional nonpayment of wages applied. *See id.*

The supreme court held the claim was governed by the six-year limitation for actions upon a statutory liability. *See* Minn. Stat. § 541.05, subd. 1(2). The six year limitation period applied to liabilities imposed by statute which did not exist at common law. *McDaniel*, 469 N.W.2d at 85. The supreme court stated:

> Section 176.82 is not a codification of the common law. The legislature enacted section 176.82 more than a decade before

this court recognized a common law action for retaliatory discharge in violation of public policy.

*Id.* (footnote omitted). The court continued:

> The scope of *Phipps* has not been clearly defined through the common law process. In contrast, section 176.82 grants specific rights and remedies, not previously recognized, to employees who are threatened with discharge or are discharged for seeking workers' compensation benefits. McDaniel's cause of action depended on rights created by statute.

*Id.* at 86. Thus, *McDaniel* proclaims that an action under section 176.82 has no element of a common law claim which could otherwise support the right to a jury trial. Therefore, the trial court properly concluded that a jury trial was not, as a matter of law, required.

## II.

Snesrud argues the trial court erred in refusing to apply the three-step test set forth in *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which requires proof by a preponderance of the evidence. This court need not defer to the trial court's decision on a legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

The *McDonnell–Douglas* test must be applied to retaliatory discharge claims. *Graham v. Special Sch. Dist. No. 1*, 472 N.W.2d 114, 119 n. 7 (Minn.1991) (citing *Phipps*, 408 N.W.2d at 572). In *Phipps*, the supreme court held that if a plaintiff demonstrates the discharge was impermissibly motivated and the employer articulates another reason for the discharge, to prevail, the plaintiff must prove by a preponderance of the evidence the discharge was for the impermissible reason. *Phipps*, 408 N.W.2d at 572.

The supreme court in *Graham* held that in analyzing a retaliatory discharge claim, if the employee establishes a prima facie case of discriminatory treatment, the employer must articulate legitimate reasons for the discharge and the factfinder must

then determine whether the employer's reasons are pretextual. *Graham*, 472 N.W.2d at 119, n. 7. Even in the case of mixed motives on the part of the employer, the *McDonnell–Douglas* analysis applies. *Id.* Likewise the *McDonnell–Douglas* analysis applies to this retaliatory discharge case.

Here, the trial court reasoned that because the legislature expressly declared the Act was not to be given a broad liberal construction, a narrow construction defeated the purpose of applying the *McDonnell–Douglas* test. Despite its refusal to apply the test, the trial court then stated that if it had applied the test, the result would have been no different. The trial court found that Snesrud made out a prima facie case by showing he was an employee of Instant Web and was terminated on the same day he submitted a claim for benefits, but that Instant Web articulated legitimate reasons for Snesrud's dismissal, centering on his refusal to do assigned work, and that Snesrud failed to prove to the court those reasons were pretextual.

The *McDonnell–Douglas* three-part analysis applies to a retaliatory discharge claim under this statute as it does to other retaliatory discharge claims. The standard is proof by a preponderance of the evidence. The trial court stated that while Snesrud failed to prove his case by clear and convincing evidence, he would have failed to prove retaliatory discharge by a preponderance of the evidence. Thus any error in applying the *McDonnell–Douglas* analysis was harmless and does not require reversal. *See* Minn.R.Civ.P. 61.

### III.

■ Snesrud argues that the trial court's decision is clearly erroneous in view of the evidence presented at trial. In all actions tried upon the facts without a jury, the trial court's findings of fact shall not be set aside unless clearly erroneous, giving due regard to the trial court to judge the credibility of witnesses. Minn.R.Civ.P. 52.01. Clearly erroneous means not "reasonably supported by evidence in the record considered as a whole." *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 441 (Minn.1983). A trial court's findings of fact will be reversed only if the reviewing court is left with a definite and firm conviction that a mistake has been made. *Gjovik v. Strope*, 401 N.W.2d 664, 667 (Minn.1987). The standard of review on appeal is whether the evidence sustains the findings and whether the findings support the conclusions. *Minneapolis Pub. Hous. Auth. v. Greene*, 463 N.W.2d 558, 560 (Minn.App. 1990).

■ At trial, testimony was received from a number of witnesses. Much of the testimony was conflicting; Snesrud and the company's witnesses presented contradictory views of the events leading up to Snesrud's termination. The decision to disbelieve Snesrud's testimony and believe that of the company representatives was within the discretion of the trial court. *See Melsha v. Wickes Cos.*, 459 N.W.2d 707, 710 (Minn.App.1990), *pet. for rev. denied* (Minn. Oct. 25, 1990). Similarly, much of the evidence in this case is documentary, and the trial court found sufficient, if not uncontested, evidence that supported Instant Web's position. *See id.* We must view the evidence in a light most favorable to the trial court's decision. *Salmon v. Wheelabrator Frye*, 409 N.W.2d 495, 497 (Minn.1987). Thus we cannot say the trial court's findings are clearly erroneous. Moreover, the findings support the trial court's conclusion that Snesrud was terminated for valid reasons independent of his having filed a workers' compensation claim. Accordingly we affirm the trial court's decision as not manifestly contrary to the evidence. *See id.*

### DECISION

The trial court correctly decided that a jury trial is not required in an action under Minn.Stat. § 176.82. The *McDonnell–Douglas* three-part analysis applies to an action under Minn.Stat. § 176.82 for retaliatory discharge. Given the evidence in the record, the trial court's decision is not clearly erroneous.

Affirmed.