**John S. McGRATH, Respondent,**

v.

**TCF BANK SAVINGS, FSB, Appellant.**

**No. C7–92–2267.**

Court of Appeals of Minnesota.

July 6, 1993.

Richard Virnig, Katz and Manka, Ltd., Minneapolis, for respondent.

Timothy Kelly, Kelly & Berens, P.A., David J. Duddleston, Mackall, Crounse & Moore, Minneapolis, for appellant.

Considered and decided by NORTON, P.J., and SCHUMACHER, and PETERSON, JJ.

## OPINION

PETERSON, Judge.

In this wrongful discharge action, appellant TCF Bank Savings, fsb (TCF) argues the trial court erred (1) in refusing to grant a new trial on, or to further reduce, the damages awarded for respondent John McGrath's emotional distress and (2) in instructing the jury on causation under the whistleblower statute. McGrath argues the trial court erred in reducing the damages awarded for his emotional distress and in granting JNOV on his defamation claim. McGrath also seeks attorney fees on appeal under the whistleblower statute. Although we hold the grant of JNOV on the defamation claim was proper, we agree the instructions were incorrect and reverse and remand for a new trial on the wrongful discharge claim.

## FACTS

Appellant TCF hired respondent John McGrath as a sales and service representative (SSR) in August 1988. McGrath was paid on an hourly basis and was classified as a non-exempt employee. McGrath got good performance reviews at TCF and was a successful salesman. However, the bank discharged McGrath in November 1990. McGrath sued TCF for wrongful termination in violation of the whistleblower laws, wrongful termination in violation of his employment contract, defamation, intentional infliction of emotional distress and to recover overtime wages.

At trial, the evidence showed TCF's official policy provided non-exempt employees who worked over forty hours a week should take compensatory (comp) time during the same week as the overtime hours were worked. If the employee was unable to take comp time, he would be paid time and a half for any overtime worked. McGrath testified that, in practice, TCF managers discouraged the reporting of overtime. McGrath said managers (1) told employees to take comp time instead of reporting their overtime but never gave employees the chance to take the comp time; (2) told employees to carry comp time over into the next pay period; (3) collected time cards early on Fridays to prevent the actual hours worked on Fridays and Saturdays from being recorded; and (4) specifically ordered employees not to report overtime. Other TCF employees testified about managers who altered their timecards or ordered them to change their timecards to remove claims for overtime. McGrath and the other employees testified they believed managers discouraged overtime because TCF paid managers bonuses for staying within the bank's overtime goals.

McGrath said he complained about TCF's overtime policy to the senior vice-president of bank operations; to the regional manager, Jim Stahlmann; to a human resources employee; and to his supervisors at the branches where he worked. In May 1990, McGrath reported TCF to the United States Department of Labor. In July 1990,

McGrath told his branch manager, Karen Warren, that he had reported TCF to the Labor Department. In the summer of 1990, McGrath told his annuity sales manager that he had reported TCF to the Labor Department. The sales manager told McGrath that he was already known as a troublemaker, that the Twin Cities banking community was a tightly knit group and that he had better watch out or he would have trouble getting any job in banking. In August or September 1990, McGrath told Stahlmann that he had reported TCF to the Labor Department.

In September 1990, after Warren refused to promote McGrath, he told her in private that TCF's failure to pay overtime was "criminal." Warren wrote McGrath a memo telling him that he was detracting from the team effort and stating:

> This memo puts you on notice that any further reference or allegations without proper documentation, heard by any employee, will be grounds for immediate termination.

Warren testified that she also told McGrath not to contact employees during working hours about the overtime policy.

McGrath testified that on November 14, 1990, his day off, he called a teller at another TCF branch to see if she would speak to the Labor Department about TCF's overtime policy. The teller's supervisor learned of the call and reported it to Stahlmann over the teller's objections. On November 16, 1990, Stahlmann told McGrath that he had crossed the line by calling the teller. Stahlmann said he would give McGrath another chance to report how much overtime TCF owed him, but McGrath said he wanted the policy changed. Stahlmann then fired McGrath.

Warren and Stahlmann testified McGrath was discharged because he was a complainer and a poor team player. Warren said McGrath complained about his lack of advancement, the overtime policy, his immediate supervisor, being blackballed and even the lunch schedule. Warren said she did not promote McGrath because he lacked company loyalty, dedication to the team effort, and pride in working for TCF, was

unhappy and frustrated with TCF, and constantly complained. Stahlmann also characterized McGrath as a dissatisfied employee who complained about the pay policy for sales and service representatives, the computer system, his lack of advancement, management, and overtime. Stahlmann claimed the memo sent to McGrath was a notice of probation and that McGrath violated probation by talking to the teller about the overtime policy during working hours. Stahlmann admitted McGrath's complaints about the overtime policy played a role in the decision to fire him.

To prove his defamation claim, McGrath introduced the September 1990 memo from Warren to himself. McGrath also testified about oral statements he claimed were defamatory. McGrath testified that when he began working at the Ridgedale branch, Warren said she had heard from his former manager, Patty Johnson, that he was a troublemaker. McGrath said another manager called him a troublemaker in front of his co-employees. When McGrath was not offered a job at another branch, the manager, Ron Britz, told McGrath someone else had been hired because it was known that McGrath had problems with management and his loyalty to the bank was questionable.

The trial court instructed the jury that an employer cannot discharge an employee because the employee in good faith reported a violation of the law. The court then said the jury would have to decide "whether TCF's discharge of McGrath was motivated in whole or in part by the report."

The jury returned a special verdict finding that TCF's discharge of McGrath was motivated, in whole or in part, by his good faith report of alleged overtime pay violations and that TCF had defamed McGrath orally, but had not breached its contract with McGrath nor defamed him in writing. The jury awarded McGrath $3,100 for lost wages, $225,000 for the emotional distress caused by the wrongful discharge and $33,000 for the oral defamation claim. The trial court granted TCF's motion for JNOV on the oral defamation claim. The trial court determined the statements in ques-

tion were not defamatory because they either were communicated only to McGrath, were privileged, or were protected by the constitution. The trial court also granted TCF's motion for a new trial on damages unless McGrath agreed to reduce the emotional distress damages award to $85,000.

## ISSUES

I. Did the trial court err in instructing the jury on the causal connection needed for a wrongful discharge claim under the whistleblower statute?

II. Did the trial court err in ordering JNOV on McGrath's defamation claim?

III. Is McGrath entitled to an award of attorney fees on appeal?

## ANALYSIS

### I.

■ A trial court is allowed considerable latitude in selecting language for jury instructions. *Alholm v. Wilt*, 394 N.W.2d 488, 490 (Minn.1986).

All that is required in the way of instructions is that the charge as a whole convey to the jury a clear and correct understanding of the law of the case.

*Id.* (quoting *Barnes v. Northwest Airlines, Inc.*, 233 Minn. 410, 421, 47 N.W.2d 180, 187 (1951)). "Jury instruction errors are not grounds for reversal unless the error is prejudicial." *Apache Plaza, Ltd. v. Midwest Sav. Ass'n*, 456 N.W.2d 729, 732 (Minn.App.1990), *pet. for rev. denied* (Minn. Aug. 23, 1990).

The whistleblower statute prohibits an employer from discharging an employee because

the employee * * * in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official.

Minn.Stat. § 181.932, subd. 1(a) (1990).

■ The three-part analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) to evaluate discrimination claims also has been used to evaluate retaliatory discharge claims. *See Phipps v. Clark Oil & Ref. Corp.*, 408 N.W.2d 569, 571–72 (Minn.1987) (three-part *McDonnell Douglas* type analysis applied to common-law wrongful discharge claim where employee was discharged after refusing to violate a federal statute); *Snesrud v. Instant Web, Inc.*, 484 N.W.2d 423, 427–28 (Minn.App. 1992), *pet. for rev. denied* (Minn. June 17, 1992) (three-part *McDonnell Douglas* analysis applied to wrongful discharge claim where employee was discharged after filing a workers' compensation claim).

In *Phipps*, a service station employee was discharged after he allegedly refused to dispense leaded gasoline into a vehicle because he believed dispensing leaded gasoline into the vehicle was a violation of federal law. *Id.* at 570. The employee brought a common law wrongful discharge action, which the trial court dismissed for failure to state a claim. *Id.* The supreme court affirmed this court's reversal of the trial court and held that an employee who is discharged for refusing to participate in an activity that the employee, in good faith, believes violates state or federal law may bring an action for wrongful discharge. *Id.* at 571.

In its analysis, the supreme court noted that, after oral argument of the case, the legislature had enacted Minn.Stat. § 181.-932, subd. 1, which created a cause of action for wrongful discharge for an employee who is discharged for refusing to participate in any activity that the employee, in good faith, believes violates any state or federal law. *Id.* This statute also contained the whistleblower provision that McGrath claims was violated when TCF discharged him.

Although the supreme court did not cite *McDonnell Douglas* in *Phipps*, it described the three-step *McDonnell Douglas* analysis as the appropriate procedure to follow in a retaliatory discharge case. *Id.* 408 N.W.2d at 572. Furthermore, in *Graham v. Special Sch. Dist. No. 1*, 472 N.W.2d 114, 119 n. 7 (Minn.1991) the supreme court cited

*Phipps* as authority for the statement that the *McDonnell Douglas* analysis must be used to analyze a retaliatory discharge claim.

We see no reason to analyze McGrath's claim of wrongful discharge in violation of the whistleblower statute differently than these other retaliatory discharge claims. The *McDonnell Douglas* analysis must be used to evaluate McGrath's whistleblower claim.

■ The parties allege different motives for TCF's discharge of McGrath. McGrath contends that retaliation for reporting overtime violations was TCF's motive while TCF contends that McGrath was discharged because his job performance was unsatisfactory. TCF argues the trial court erred in instructing the jury that it violated the whistleblower statute if it discharged McGrath "in whole or in part" for reporting the overtime violations. TCF maintains it is liable for wrongful discharge only if McGrath's overtime violations reports were the substantial causative factor in his discharge. We must determine how the *McDonnell Douglas* analysis is to be applied to this "mixed-motive" case.

In analyzing "mixed-motive" cases arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (1988), federal courts have applied a "same decision" analysis.[1] *See Anderson v. Hunter, Keith, Marshall & Co.,* 417 N.W.2d 619, 624–26 (Minn.1988) (discussing federal courts' analysis of mixed-motive discrimination cases). Under the "same decision" analysis, once a plaintiff has met the burden of showing that discrimination more likely than not was a motivating factor in an adverse employment decision, the defendant must be given the opportunity to show, by a preponderance of the evidence, that the same decision would have been reached even in the absence of discrimination. *Id.* at 625. If the defendant meets this burden of production, there is no liabil-

ity even if discrimination has occurred. *Id.* at 625–26.

In *Anderson* the supreme court specifically declined to employ the "same decision" analysis in a wrongful termination action brought under the Minnesota Human Rights Act when more than one reason for the adverse employment action was alleged. *Id.* at 626. The supreme court concluded the "same decision" analysis

> would defeat the broad remedial purposes of the Minnesota Human Rights Act by permitting employers, definitionally guilty of prohibited discrimination, to avoid all liability for the discrimination provided they can prove that other legitimate reasons may coincidentally exist that could have justified the discharge.

*Id.*

Under the reasoning in *Anderson,* if there is a discriminatory reason for discharging an employee, an employer is liable for wrongful discharge even if there is also a nondiscriminatory reason. A discharged employee does not have to demonstrate that discrimination was the sole, or even the primary, cause of the discharge. *Id.*

However, the Supreme Court went on to hold in *Anderson* that the *McDonnell Douglas* analysis should be applied in a "mixed-motive" wrongful discharge case, stating:

> Because the *McDonnell Douglas* analysis, employed by this court in the past and by the trial court in this case, better effectuates the underlying policy of the Human Rights Act to protect victims of discrimination while simultaneously affording the alleged perpetrator the opportunity to articulate legitimate undiscriminatory reasons for the employment actions taken, we affirm the courts below in rejecting an ostensibly different analysis in a so-denominated "mixed-motive" case. Courts of this state should continue to apply the *McDonnell Douglas* analysis in employment cases involving claims of disparate treatment

---

1. Discrimination claims brought under the Minnesota Human Rights Act are helpful to our analysis of a whistleblower claim because they offer guidance as to the proper application of

the *McDonnell Douglas* test. Federal cases interpreting Title VII also are instructive for the same reason.

brought under the Minnesota Human Rights Act regardless of whether a claim has the label of being a "single-motive" or "mixed-motive" case.

*Id.*

The same reasoning and policy considerations that apply to a "mixed-motive" wrongful termination case brought under the Minnesota Human Rights Act apply to a "mixed-motive" wrongful termination action brought under the whistleblower statute. Thus, the charge given in· the present case misstated the applicable law because it did not instruct the jury to use the three-part *McDonnell Douglas* analysis to evaluate McGrath's wrongful discharge claim. *See Graham*, 472 N.W.2d at 119 n. 7 (in dicta, supreme court stated *McDonnell Douglas* test should be applied to mixed motive retaliatory discharge case.)

The *McDonnell Douglas* analysis requires the plaintiff in a whistleblower case to establish a prima facie case that his discharge was motivated by an impermissible reason. *Id.; Phipps*, 408 N.W.2d at 572; *Snesrud*, 484 N.W.2d at 427. The burden of production then shifts to the employer to articulate another permissible reason for the discharge. *Graham*, 472 N.W.2d at 119 n. 7; *Phipps*, 408 N.W.2d at 572; *Snesrud*, 484 N.W.2d at 427. If the employer offers such a reason, the factfinder must then determine whether the employer's proffered reason is pretextual. *Graham*, 472 N.W.2d at 119 n. 7; *Snesrud*, 484 N.W.2d at 427. To recover under the whistleblower statute, the employee must demonstrate that the employer's proffered reason for discharge is pretextual. *Graham*, 472 N.W.2d at 1219 n. 7; *Phipps*, 408 N.W.2d at 572; *Snesrud*, 484 N.W.2d at 427–28. The instruction given was in error because it did not require the jury to deter-mine whether the reasons for McGrath's discharge offered by TCF were pretextual.[2]

■ TCF is entitled to a new trial because the incorrect instructions given were prejudicial. At trial, TCF offered many legitimate reasons for McGrath's discharge. Under the *McDonnell Douglas* analysis, McGrath bears the burden of proving TCF's proffered reasons are pretextual. *Anderson*, 417 N.W.2d at 627; *Phipps*, 408 N.W.2d at 572. The instruction used by the trial court did not require the jury to even consider whether TCF's proffered reasons for discharge were pretextual. Because the jury was instructed to find the bank liable if McGrath's discharge was motivated, in whole or in part, by his overtime violations report, the jury could have found for McGrath even if it would also have· determined TCF's reasons were not mere pretext.

If the jury had been instructed to use the *McDonnell Douglas* test, its decision may have been different. Thus, TCF is entitled to a new trial on the wrongful discharge claim. *See Apache Plaza*, 456 N.W.2d at 733 (when proper instruction might have led to different result, error in jury instruction was prejudicial and complaining party is entitled to a new trial). Given our reversal of the jury's verdict on McGrath's wrongful discharge claim, we need not decide whether the damages awarded to McGrath for this claim were excessive.

## II.

■ "The trial court's granting of JNOV is a question of law subject to *de novo* review." *Huyen v. Driscoll*, 479 N.W.2d 76, 78 (Minn.App.1991), *pet. for rev. denied* (Minn. Feb. 10, 1992). When the jury's findings are contrary to the law, JNOV is proper. *Id.*

---

**2.** Applying the *McDonnell Douglas* analysis does not necessarily achieve the goal of imposing liability for discrimination if there is one discriminatory and one nondiscriminatory reason for discharge. The shortcoming of the *McDonnell Douglas* analysis is that it requires the factfinder to determine whether the proffered non-discriminatory reason for discharge is pretextual rather than to specifically determine whether the alleged discriminatory reason is one of the reasons for discharge. If there are two reasons for discharge and one of the reasons is nondiscriminatory, when asked to determine whether the nondiscriminatory reason claimed by the employer is pretextual, the factfinder could conclude that it is not and there would be no liability even if the other reason for discharge was discriminatory. However, given precedent, the *McDonnell Douglas* analysis must be applied to this case.

■ A statement is defamatory when it is communicated to someone other than the plaintiff, it is false, and it tends to harm the plaintiff's reputation and to lower him in the estimation of the community. *Phipps*, 408 N.W.2d at 573.

■ However, statements about matters of public concern that are not capable of being proven true or false and statements that reasonably cannot be interpreted as stating facts are protected from defamation actions by the First Amendment. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19–21 110 S.Ct. 2695, 2706–07, 111 L.Ed.2d 1 (1990). A four factor test that examines the precision and specificity of the statement, its verifiability, and the social, literary and public context in which the statement was made is helpful in determining whether a statement is actionable. *Huyen*, 479 N.W.2d at 79; *Lund v. Chicago & N.W. Transp. Co.*, 467 N.W.2d 366, 368–69 (Minn.App.1991), *pet. for rev. denied* (Minn. June 19, 1991). Whether a statement can be proven false or interpreted as stating facts is a question of law. *Lund*, 467 N.W.2d at 369.

■ McGrath argues the trial court erred in granting JNOV on his defamation claim. We disagree. The oral statements at issue fall into three categories: (1) threats that McGrath would be blackballed at other banks;[3] (2) statements between managers about McGrath; and (3) a manager's statement to employees about McGrath. Essentially, all the managers' statements involve the phrase "troublemaker." The trial court found the phrase "troublemaker" was not actionable because:

> Unlike the accusation that a person is "dishonest," which suggests specific acts which society has determined to be improper, making trouble is generally in the eye of the beholder, and for that reason cannot be proven true or false.

The trial court properly determined the phrase "troublemaker" was not actionable under either constitutional or common law standards. The term "troublemaker" lacks precision and specificity. This phrase also fails to suggest verifiable false facts about McGrath. Finally, the ambiguity of the term "troublemaker" prevents any underlying facts from being inferred from this phrase. Accordingly, the phrase "troublemaker" is not actionable because it is constitutionally protected.[4]

■ Further, the statements' lack of precision, specificity, and verifiability prevents the inference that McGrath committed specific acts that society finds reprehensible.[5] Thus, in this case, the phrase "troublemaker" is not defamatory under the common law. *See Weissman v. Sri Lanka Curry House, Inc.*, 469 N.W.2d 471, 473 (Minn.App.1991) (under common law, adjective such as "dishonest" was defamatory because it implied the commission of specific act or conduct society found reprehensible).

■ McGrath also argues the trial court erred in finding the oral statements between the managers were qualifiedly privileged. To be privileged, a statement "must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause." *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 256–57 (Minn.1980). Whether a qualified privilege exists is a question of law. *Lewis v. Equitable Life Assurance Soc'y*, 389 N.W.2d 876, 889 (Minn.1986).

---

3. McGrath does not argue on appeal that the trial court incorrectly determined the "blackballing" comments were not actionable because they were never published. Since the record clearly shows no one at TCF ever talked about McGrath to anyone at another bank, the trial court's decision was correct.

4. In a case involving private parties and private concerns, a state's interest in providing a remedy for defamation can outweigh constitutional

concerns. *Lund*, 467 N.W.2d at 369 n. 1 (*citing Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 760–61, 105 S.Ct. 2939, 2946, 86 L.Ed.2d 593 (1985)). When the statements "are clearly opinions, the state's interest fades and the first amendment predominates." *Id.*

5. In fact, as TCF argues, someone may be called a troublemaker for committing acts which society finds commendable.

■ McGrath does not dispute the trial court's decision that the statements between managers were made upon a proper occasion and from a proper motive but instead argues the court erred in finding the managers had probable cause for their statements when the jury decided otherwise. To determine whether an employer had reasonable or probable cause to make a statement, we must examine the facts supporting the defamatory allegations. *Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 380 (Minn.1990). Probable cause exists when investigative steps, including personal questioning of the employee, were taken "in an effort to ascertain the accuracy of statements made about the employee's conduct." *Id.* The employer may have reasonable or probable cause to make a statement even though hindsight shows the statement was false. *Id.* When the evidence "permits of more than one conclusion regarding the existence of reasonable or probable cause, the question becomes one of fact for the jury." *Id.* at 380 n. 4.

■ Here, the trial court properly determined the evidence did not permit more than one conclusion regarding the existence of probable cause for the managers' statements. The record shows the managers who called McGrath a troublemaker were not repeating something they had heard about him but were basing their statements on their own encounters with him. The managers who spoke about McGrath had personally heard his complaints and believed McGrath was a troublemaker even if hindsight proved this label may have been false. As each manager formed an opinion of McGrath's behavior from personal experience, the managers did not need further investigation to verify the accuracy of their statements about McGrath. Given the manager's personal experience with McGrath's complaints, the trial court correctly determined the only conclusion possible from the evidence was that the managers had reasonable and probable cause for their statements about McGrath.

### III.

■ Minn.Stat. § 181.935(a) (1990) provides that

an employee injured by a violation of section 181.932 may bring a civil action to recover any and all damages recoverable at law, together with costs and disbursements, including reasonable attorney's fees.

When "a prevailing party is entitled by statute to recover attorney fees at trial, that plaintiff may also be entitled to attorney fees on appeal." *Bucko v. First Minn. Sav. Bank, F.B.S.*, 471 N.W.2d 95, 99 (Minn.1991). In *Bucko*, the supreme court allowed the parties prevailing on appeal to recover attorney fees incurred on appeal and stated that to do otherwise "would defeat the intent of the legislature in providing for recovery of attorney fees." *Id.*

McGrath argues he is entitled to an award of attorney fees incurred on appeal. However, McGrath has not prevailed on appeal. Thus, he is not entitled to recover attorney fees and costs incurred on appeal.

### DECISION

The trial court erred in not instructing the jury to use the *McDonnell Douglas* analysis to evaluate McGrath's wrongful discharge claim. TCF is entitled to a new trial because it was prejudiced by the failure to so instruct the jury. The trial court properly granted JNOV for TCF on McGrath's defamation claim because the statements were protected by the constitution, were not actionable under the common law, and were qualifiedly privileged. McGrath is not entitled to an award of attorney fees under the whistleblower statute because he did not prevail on appeal.

**Affirmed in part, reversed in part, and remanded.**