50 F.3d 514
 131 Lab.Cas. P 58,055
 Mary Jo NICHOLS, Plaintiff-Appellant,
v.
METROPOLITAN CENTER FOR INDEPENDENT LIVING, INC.; John
Walsh, individually and as Executive Director of
Metropolitan Center for Independent
Living, Inc., Defendants-Appellees.
 No. 94-2054.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 14, 1994.
Decided March 14, 1995.
 
 Karla Wahl, Minneapolis, MN, argued, for appellant.
 William Gengler, Minneapolis, MN, argued, for appellees.
 Before MAGILL, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and LOKEN, Circuit Judge.
 LOKEN, Circuit Judge.
 
 
 1
 Mary Jo Nichols commenced this action in state court, alleging that the Metropolitan Center for Independent Living ("MCIL") and John Walsh, MCIL's executive director, violated 42 U.S.C. Sec. 1983, the Minnesota Constitution, and two Minnesota "whistleblower" statutes in terminating Nichols's employ with MCIL. After removal, the district court[1] granted summary judgment for defendants, concluding that the Sec. 1983 and constitutional claims fail because MCIL is not a state actor, and that Nichols failed to present a prima facie case of unlawful retaliation under the whistleblower statutes. Nichols appeals. We affirm.
 
 I.
 
 2
 The federal government makes funds available to the States to fund "centers for independent living" which provide independent living services to handicapped persons. See 29 U.S.C. Secs. 796-7961. Under that program, the State of Minnesota grants certificates to nonprofit corporations that qualify as centers for independent living. Minnesota then provides federal and state funding to certificated centers and regulates certificate holders to ensure that they remain eligible for that funding. See Minn.Stat. Sec. 268A.11; Minn.Rules Secs. 3300.3100-.3270 (1993).
 
 
 3
 MCIL is a private corporation located in St. Paul, Minnesota, and organized under the Minnesota Nonprofit Corporation Act. See Minn.Stat. ch. 317. MCIL was one of three centers for independent living established in Minnesota in 1981 to provide independent living services to persons with disabilities. In 1992, 98% of MCIL's revenues came from federal and state funding. To remain certificated and eligible for that funding, MCIL must comply with Minn.Stat. Sec. 268A.11 and its implementing rules.
 
 
 4
 From 1986 until her termination in 1992, Nichols was MCIL's Support Services Coordinator. Though her formal job description was broader, Nichols's primary focus was assuring that public transportation is provided to individuals with disabilities in the Twin Cities metropolitan area. Nichols served on the Transit Accessibility Advisory Committee to the Regional Transit Board.
 
 
 5
 In November 1991, MCIL's Board of Directors adopted a new Long Range Plan. The Board's intent was, as one member averred, "to redesign [MCIL's] approach to the community, focusing more on consumer empowerment and consumer involvement in issues." In more practical terms, Executive Director Walsh told Nichols that, in implementing the Plan, MCIL would reduce its transportation services and eliminate her position, and that she must resign from the transit advisory committee. Nichols strenuously protested these changes, first informally and then by a formal grievance to the Board of Directors. Nichols argued that the reduction in transportation services would result in MCIL losing its government funding and certification. The Board rejected her grievance and upheld Walsh's decisions.
 
 
 6
 Having eliminated her prior position, Walsh offered Nichols a new position at the same salary. When Nichols refused, Walsh terminated her employ, and the MCIL Board rejected her second grievance protesting the termination.[2] Nichols complained to the Minnesota Department of Jobs and Training, which investigated and "found the Center's actions in this matter to be consistent" with its responsibility "to make program service and personnel decisions within the requirement of Federal and State law, rules ... and [its] contracts with the Division of Rehabilitation Services."
 
 
 7
 Nichols then commenced this action. She alleged violations of her liberty interest and due process rights under Sec. 1983 and the Minnesota Constitution. She further alleged that defendants violated two Minnesota whistleblower statutes, Minn.Stat. Secs. 181.932 and 181.933, by firing Nichols because she opposed conduct which she believed to be unlawful, and by not giving her a written statement of reasons for the termination. Nichols now appeals the grant of summary judgment dismissing these claims.
 
 II.
 
 8
 Nichols's primary contention on appeal is that the district court erred in dismissing her whistleblower retaliation claim. The relevant statute provides:
 
 
 9
 An employer shall not discharge ... an employee ... because (a) the employee ... in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official; ... [or because] (c) the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law and the employee informs the employer that the order is being refused for that reason.
 
 
 10
 Minn.Stat. Sec. 181.932, subd. 1. The Minnesota courts apply the familiar three-part McDonnell Douglas analysis in resolving claims of retaliatory discharge under Sec. 181.932. See McGrath v. TCF Bank Savings, 502 N.W.2d 801 (Minn.App.), modified, 509 N.W.2d 365 (Minn.1993); Phipps v. Clark Oil & Ref. Corp., 408 N.W.2d 569, 571-72 (Minn.1987). Therefore, to avoid summary judgment dismissing this claim, Nichols must establish a prima facie case of retaliatory discharge. See Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382-83 (8th Cir.1994).
 
 
 11
 Under Minnesota law, a prima facie case of retaliatory discharge requires proof of "(1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two." Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 444 (Minn.1983). Our focus here is on the first element of that standard, whether Nichols engaged in conduct that is protected by Sec. 181.932.
 
 
 12
 Nichols argues that she satisfies this element of the prima facie case because of her good faith belief that MCIL was proposing to violate its "legal obligation to provide transportation referral and assistance services." More specifically, in her amended affidavit opposing defendants' motion for summary judgment, Nichols averred:
 
 
 13
 I understood that MCIL had a statutory mandate to provide services in the area of public transportation for the disabled. I also understood that in order for MCIL to continue to be certified and to receive public funding, it was required to provide certain advocacy assistance to disabled consumers regarding their public transit opinions.... I believed that the changes which Mr. Walsh indicated were going to occur, were contrary to the statutory mandate and violative of both federal and state law.... After I voiced my objections to the fundamental changes in services which I believe are required by both federal and state statu[t]e and are necessary to be provided in order to receive the full compl[e]ment of funding, I was told that my position was going to be changed and that I was being demoted....
 
 
 14
 The statutory "mandate" to which Nichols refers is the Minnesota statute which defines "independent living services" to include "housing and transportation referral and assistance," Minn.Stat. Sec. 268A.11, subd. 1(5), and the regulation which provides that, to obtain and maintain a certificate, a center for independent living "must at a minimum provide ... (4) housing and transportation referral and assistance," Minn.R. Sec. 3300.3200, subp. 2.G. (4).[3] This is not a mandate in the penal or regulatory sense of the word. It is a condition, indeed, a most general and open-ended condition, that MCIL must satisfy to maintain its status as a certificated center for independent living that is eligible for government funding. Nichols's whistleblower claim founders on this essential distinction.
 
 
 15
 Nichols urged MCIL not to take action that she believed would jeopardize its eligibility for public funding. An employer that takes action causing it to lose a government grant, loan, contract, or other benefit does not break the law.[4] Thus, however well-intentioned, Nichols's complaint concerned a change in MCIL's management policies, not a "violation of law" within the meaning of Sec. 181.932. The whistleblower statute is intended to protect the public from unlawful employer conduct; "[t]he public does not have an interest in a business's internal management problems." Vonch v. Carlson Cos., 439 N.W.2d 406, 408 (Minn.App.1989). See Nordling v. Northern States Power Co., 478 N.W.2d 498, 504 (Minn.1991); Michaelson v. Minnesota Mining & Mfg. Co., 474 N.W.2d 174, 180 (Minn.App.1991), aff'd, 479 N.W.2d 58 (Minn.1992); Petroskey v. Lommen, Nelson, Cole & Stageberg, P.A., 847 F.Supp. 1437, 1447 (D.Minn.), aff'd, 40 F.3d 278 (8th Cir.1994). Because Sec. 181.932 does not apply, Nichols's employment was terminable at-will under Minnesota law.
 
 
 16
 Finally, Nichols argues that MCIL violated Minn.Stat. Sec. 181.933 by failing to provide her with a written explanation of the reasons for her termination. However, an employer is only liable under Sec. 181.933 to "an employee injured by a violation of section 181.932." Minn.Stat. Sec. 181.935. Because Nichols failed to prove that MCIL violated Sec. 181.932, the district court properly granted summary judgment dismissing her claim under Sec. 181.933.
 
 III.
 
 17
 Nichols also argues that the district court erred in dismissing her claims under Sec. 1983 and the Minnesota Constitution. Both of these claims require proof that the termination of Nichols's employment was "fairly attributable to the State," that is, in this context, that "the party charged with the deprivation [was] a person who may fairly be said to be a state actor." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 2753-54, 73 L.Ed.2d 482 (1982); see Campbell v. St. Mary's Hospital, 312 Minn. 379, 252 N.W.2d 581, 585 (1977). The district court concluded that MCIL is not a state actor. We agree.
 
 
 18
 In our view, this issue is controlled by Rendell-Baker v. Kohn, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), a case decided the same day as Lugar. In Rendell-Baker, six terminated employees of the New Perspectives School brought a Sec. 1983 action alleging that the terminations violated their First Amendment and due process rights. The School was a nonprofit institution that dealt with students who had difficulty completing public high school. Though the School received over 90% of its revenues from public funds, the Supreme Court held that the terminations were not the result of state action because (i) "the school's receipt of public funds does not make the discharge decisions acts of the State"; (ii) "the decisions to discharge the petitioners were not compelled or even influenced by any state regulation"; (iii) the education of students who cannot be served by traditional public schools is not "the exclusive prerogative of the State"; and (iv) "the school's fiscal relationship with the State is not different from that of many contractors." 457 U.S. at 840-43, 102 S.Ct. at 2770-72. See also Blum v. Yaretsky, 457 U.S. 991, 1002-12, 102 S.Ct. 2777, 2784-90, 73 L.Ed.2d 534 (1982).
 
 
 19
 Nichols argues that MCIL is a state actor because it depends upon government for nearly all its funding; because it performs uniquely public functions; and because it is subject to extensive governmental regulation and licensing, including a requirement that over one-half of its Board members be disabled persons, or spouses or parents of disabled persons. However, all of these factors were present, perhaps to an even greater degree, in Rendell-Baker. What was missing here and in Rendell-Baker, and what was present in McVarish v. Mid-Nebraska Community Mental Health Ctr., 696 F.2d 69 (8th Cir.1982), upon which Nichols relies, is direct government control, either of the organization, like the multi-county health center in McVarish, or of the conduct that caused the alleged deprivation of plaintiff's rights. Here, as in Rendell-Baker, the government does not control or dictate MCIL's personnel decisions, as confirmed by the State agency's response to Nichols's post-termination complaint. See also Blum, 457 U.S. at 1004, 102 S.Ct. at 2785-86 ("constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains"). Thus, MCIL is not a state actor and Nichols's termination was not the result of state action.
 
 
 20
 The judgment of the district court is affirmed.
 
 
 
 [1]
 The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota
 
 
 [2]
 There are fact disputes between the parties concerning the events immediately preceding Nichols's termination, but they are not material to the issues that govern this appeal
 
 
 [3]
 The federal statute does not require a center for independent living to provide transportation services to be eligible for federal funding. See 29 U.S.C. Secs. 796f-4(b)(5); 706(30)(B)(xi)
 
 
 [4]
 On the other hand, an employer that dishonestly obtains or retains a government-bestowed benefit, for example, by submitting a false report or misleading a government official, in most cases is breaking the law. Nichols makes no such allegation