635

Charles M. HUGHLETT, Plaintiff,

v.

SPERRY CORPORATION, Defendant.

No. Civ. 4–86–172.

United States District Court,
D. Minnesota,
Fourth Division.

May 22, 1987.

Howard A. Knutson, Burnsville, Minn., for plaintiff.

Thomas M. Sipkins, Popham, Haik, Schnobrich, Kaufman & Doty, David S. Doty and Julie A. Sweitzer, Minneapolis, Minn., for defendant.

**MEMORANDUM OPINION AND ORDER**

DIANA E. MURPHY, District Judge.

Plaintiff Charles M. Hughlett brought this action in Dakota County District Court against defendant Sperry Corporation, alleging that his employment termination constituted breach of an implied covenant of good faith and fair dealing, negligent misrepresentation, and race discrimination under the Minnesota Human Rights Act, Minn.Stat. § 363.03. Plaintiff seeks both injunctive relief and damages. Defendant removed the action, alleging diversity jurisdiction. The court granted defendant's motion for summary judgment on plaintiff's first two causes of action on August 20, 1986, 650 F.Supp. 312. The parties subsequently conducted further discovery, and the period for discovery ended on January 2, 1987. Now before the court is defendant's motion for summary judgment on plaintiff's claim of race discrimination.

The court's previous opinion sets forth the background of this case. A number of facts are undisputed. Plaintiff, a black male, began work as a wafer fabrication supervisor with defendant on January 14, 1985. In the spring of 1985, David Snow, Operations Manager of Sperry's Metal Oxide Semiconductor (MOS) Fabrication area, and Steven Wamboldt, Fabrication Manager in that area, decided to create a new level of management called "shift superintendent" between themselves and the supervisors. To fill these positions, Snow and Wamboldt promoted plaintiff from his supervisor position and hired Sheila Dyar, a white female, and Andy Cormack, a white male.

As a result of an economic downturn in the semiconductor industry in 1985,[1] defendant's management determined that a reduction-in-force was necessary, which would require the elimination of four of the six superintendent and supervisor positions. At a meeting on December 4, 1985, defendant's management discussed a number of ways to eliminate the positions. First, Steven Wamboldt recommended that

1. In a news release dated February 6, 1987, defendant announced the forthcoming closure of its semiconductor facility in Eagan, Minnesota, where plaintiff had been employed.

Dyar and Cormack be retained and that plaintiff and the three supervisors be laid off. Richard Sears, defendant's legal counsel, advised that retaining Dyar and Cormack, while terminating plaintiff, would be race discrimination. That proposal was rejected. The second option considered was that of retaining Dyar and plaintiff while eliminating Cormack. David Snow rejected that proposal because he felt that Cormack was his best superintendent. The option finally selected was that of retaining the two most senior supervisors, terminating the third supervisor, and eliminating the superintendent position, thus laying off Dyar, Cormack, and plaintiff.

Plaintiff's complaint largely focuses on his discharge, which he asserts was racially motivated. He also alleges that because of his race he was excluded from some meetings and received less compensation. As proof of impermissible motivation, plaintiff relies on a statement allegedly made by Snow on the day following his termination. According to Phillip DeVoir, a Personnel Representative of defendant at the time, Snow said to Wamboldt: "Steve, tell Andy [Cormack] any way we cut it, he was a dead man, there was no way we could get around a black male and a pregnant female." For the purposes of this motion, the court assumes that the statement was in fact made.

Count 3 of plaintiff's complaint asserts that he was discriminated against on the basis of his race in violation of the Minnesota Human Rights Act ("MHRA"). The MHRA makes it an "unfair employment practice" for an employer, on the basis of race, to discharge an employee or "to discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment." Minn.Stat. § 363.03 subd. 1(2)(b) and (c).

In considering claims of discrimination under the MHRA, Minnesota courts have adopted the analysis developed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. *See Sigurdson v. Isanti County*, 386 N.W.2d 715, 719–20 (Minn.1986); *Danz v. Jones*, 263 N.W.2d 395, 398–99 (Minn.1978). The Supreme Court has established a three-stage allocation of burdens for a claim of discriminatory treatment under Title VII:

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) (citations omitted) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973)). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all time with the plaintiff." *Id.* at 253, 101 S.Ct. at 1093.

To establish a prima facie case in a discharge case, plaintiff must prove by a preponderance of the evidence that he was terminated "under circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1094 (footnote omitted). The Supreme Court described a prima facie case of race discrimination in the job application context in *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Several courts have adapted that standard to apply to the discriminatory discharge context:

[T]he plaintiff must show (i) that he was within the protected class; (ii) "that he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance"; and (iii) "that his employer sought a replacement with qualifications similar to his own, thus demonstrating a continued need for the same services and skills."

*Sengupta v. Morrison–Knudsen Co.,* 804 F.2d 1072, 1075 (9th Cir.1986) (quoting *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1013 (1st Cir.1979) (footnote omitted)). The Court of Appeals recently applied the third portion of the test to the reduction-in-force context:

> In a reduction-in-force case, there is no adverse inference to be drawn from an employee's discharge if his position and duties are completely eliminated; it is readily explained by the employer's economic hardship and the decrease in business. If [plaintiff] cannot show that [defendant] has some continuing need for his skills and services in that his various duties were still being performed, then the basis of his claim collapses.

*Leichihman v. Pickwick International,* 814 F.2d 1263, 1270 (8th Cir.1987). Defendant concedes that plaintiff meets the first two parts of the test, but argues that he cannot meet the third.

Plaintiff does not discuss this test, and has made no showing that defendant demonstrated a continuing need for the same services and skills he offered. He therefore has not established a prima facie case of race discrimination with respect to his discharge under the *Sengupta* standard. Plaintiff attempts to establish a prima facie case by placing heavy emphasis on Snow's comment about the discharge of Cormack. ("Steve, tell Andy [Cormack] any way we cut it, he was a dead man, there was no way we could get around a black male and a pregnant female.") According to plaintiff, one can reasonably infer from the statement that his discharge resulted from discriminatory intent. Plaintiff also argues that one of the two supervisors retained after the lay off, James Strempke, had received unsatisfactory job evaluations and that plaintiff should therefore have been "demoted" or able to "bump" Strempke out of the supervisor position.

Even viewing Snow's comment in the light most favorable to plaintiff, however, it is insufficient to establish a prima facie case of racial discrimination on the record presented to the court. And, of course, recognition of an employee's race does not itself constitute racial discrimination; indeed, such recognition may be necessary to avoid or remedy discrimination. *See, e.g., Regents of the University of California v. Bakke,* 438 U.S. 265, 407, 98 S.Ct. 2733, 2807–08, 57 L.Ed.2d 750 (1978) (Blackmun, J.) ("In order to get beyond racism, we must first take account of race."). Plaintiff was terminated along with two white persons when the superintendent position was eliminated. One of the proposals considered would have retained plaintiff and Dyar. Plaintiff's argument that he should have been allowed to "bump" one of the supervisors provides no basis for an inference of discrimination when neither of the other two superintendents was offered that option.

Plaintiff has failed to establish a prima facie case of discrimination either under the *Sengupta* standard or on the basis of other evidence presented. "[F]ailure to establish a prima facie case warrants summary judgment." *Pace v. Southern Railway System,* 701 F.2d 1383, 1391 (11th Cir.), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983); *see also Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1219–20 (7th Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981).

Even if plaintiff had established a prima facie case of discrimination, defendant's reduction-in-force for economic reasons constitutes a legitimate, nondiscriminatory reason for his discharge. *See Holley v. Sanyo Manufacturing, Inc.,* 771 F.2d 1161, 1164 (8th Cir.1985). This would shift the burden to plaintiff to show that this reason was pretextual. To avoid summary judgment, plaintiff would be required to show a genuine issue of material fact concerning the pretext. *See Pace v. Southern Railway System,* 701 F.2d at 1391. Plaintiff here has not presented such evidence and does not appear to dispute the legitimacy of the reduction-in-force. Defendant's motion for summary judgment should therefore be granted on plaintiff's discrimination claim with respect to his discharge.

Even viewing the facts in the light most favorable to plaintiff, as the court must do

on a motion for summary judgment,[2] the record indicates that plaintiff has made an insufficient showing on his claim that he was excluded from meetings and received less compensation. "Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Defendant's motion for summary judgment should therefore be granted.

Accordingly, based upon the above and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that defendant's motion for summary judgment on count 3 of plaintiff's complaint is granted, and the claim is dismissed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

2. *See, e.g., Kresse v. Home Insurance*, 765 F.2d 753, 754 (8th Cir.1985).