James L. MILLER, Appellant,

v.

CERTAINTEED CORPORATION, a Delaware corporation, CertainTeed Corporation Salaried Employees Pension Plan & Trust, Appellees.

No. 91–2878.

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1992.

Decided Aug. 3, 1992.

Peter J. Timmons, Minneapolis, Minn., argued for appellant.

Frank Vogl, Minneapolis, Minn., argued (Caryn Glover, on the brief), for appellees.

Before McMILLIAN, JOHN R. GIBSON, and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

James L. Miller appeals the district court's[1] grant of summary judgment disposing of his diversity claims for age discrimination, retaliatory discharge, and breach of contract. We find Miller's three grounds of appeal to be without merit and, therefore, affirm.

## I.

CertainTeed Corporation manufactures various products, including roofing materials. The company's Shelter Materials Group operates three roofing plants located in Shakopee, Minnesota, Avery, Ohio, and Oxford, North Carolina. CertainTeed hired Miller on March 3, 1980, as a drafter in its Shakopee plant. Miller was forty-eight years old at the time.

On April 11, 1985, Miller was struck from behind by a front-end loader. The blow caused Miller to hit his head on the concrete floor at the plant. Miller did not miss any work as a result of the accident, but within eighteen months began experiencing headaches that he attributed to the accident. Miller claimed by mid-October 1988 that he had incurred $2000 in medical expenses as a result of the fall. CertainTeed filed a first report of injury on Miller's worker's compensation claim on October 18, 1988. The company's third party worker's compensation claims administrator denied the claim on December 23, 1988. A claim petition is now pending before the Worker's Compensation Division of the Minnesota Department of Labor and Industry.

Between September 1987 and January 1989, CertainTeed expanded its Shakopee plant by adding a second roofing line and warehouse. When complete, the Shakopee plant was the largest of the company's three roofing plants and had the greatest production capacity. Prior to expansion, the Shakopee plant's engineering staff consisted of plant engineer Gary Swenson and Miller, a drafter. The Ohio and North Carolina plants both had in-house engineering staffs of at least two engineers with degrees but no drafters.

Swenson sought approval in September 1988 to hire an additional project engineer for the Shakopee plant. The company authorized the Shakopee plant to add an engineer, but was told it could not increase the number of employees at the plant. The plant formally requested permission on

1. The Honorable Edward J. Devitt, Senior United States District Judge for the District of Minnesota (deceased).

January 11, 1989, to upgrade the drafter position to project engineer. The request explained that the drafting position no longer adequately met the plant's post-expansion needs, a project engineer was needed to support the principal plant engineer, and an engineer would be needed to operate a computer aided design (CAD) machine that would be purchased in early 1989. The request also noted that the current drafter (Miller) would be offered alternative employment at the plant. The company approved the project engineer position on February 15, 1989. The new project engineer position carried a salary approximately $5000 higher than the drafting position.

Miller declined CertainTeed's offer of continued employment as a plant security guard at a slightly reduced rate of pay with benefits. He was discharged on March 3, 1989. At the time of discharge, Miller was fifty-seven years old and was earning approximately $24,300 a year. Miller claims he was told at his termination that he was going to be replaced with a "junior CAD engineer."

CertainTeed hired Karl Anderson, a thirty-year-old engineer, in May 1989 at an annual salary of approximately $29,500 plus benefits. Anderson quit in February 1990, and was replaced by Radu Valasutean, a thirty-eight-year-old engineer at an annual salary of $41,000 plus benefits.

Miller filed suit alleging diversity claims of age discrimination in violation of the Minnesota Human Rights Act, Minn.Stat. §§ 363.01–363.15 (1991); retaliatory discharge for filing a worker's compensation claim, in violation of Minn.Stat. § 176.82; and breach of an employment contract.[2] Miller also alleged claims under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1988), which are not subject to this appeal. The district court granted CertainTeed's motion for summary judgment on all counts. *Miller v. CertainTeed Corp.,* Civ. 3–90–127 (D.Minn. July 13, 1991). On ap-

peal, Miller argues that genuine issues of material fact exist to support his claims for age discrimination, retaliatory discharge, and breach of contract.

## II.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In ruling on motions for summary judgment, we must give the nonmoving party all reasonable inferences that can be drawn from the underlying facts. *Fischer v. NWA, Inc.,* 883 F.2d 594, 598–99 (8th Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990).

### A. Age Discrimination

Miller contends he was discharged because of his age in violation of the Minnesota Human Rights Act. That Act provides that it is an unfair employment practice for an employer to discharge an employee because of age. Minn.Stat. § 363.03, subd. 1(2)(b) (1991). The United States Supreme Court has delineated a burden-shifting formula for determining discrimination claims under Title VII. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The Minnesota Supreme Court has adopted this procedure for analyzing claims under the Minnesota Human Rights Act. *Sigurdson v. Isanti County,* 386 N.W.2d 715, 719–20 (Minn.1986). Under this formula, the plaintiff bears the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination. A plaintiff may establish a prima facie case by showing (1) he is a member of a protected class; (2) he was qualified for the job from which he was discharged; (3) he was discharged; and (4) the employer assigned a nonmember of the protected class to do the same work. *Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 442 (Minn.1983). If the plaintiff meets this burden, the employer must then articulate

---

**2.** Miller filed suit in Scott County District Court. CertainTeed removed the action to federal court.

some legitimate, nondiscriminatory reason for the action. Finally, if the company meets this burden, the plaintiff must respond with proof by a preponderance of the evidence that the articulated reason for the company's action was a pretext for discriminatory animus. *Sigurdson*, 386 N.W.2d at 720. Although this analysis outlines a shifting burden of production on the parties, the ultimate burden remains with the plaintiff to prove to the trier of fact that the defendant intentionally discriminated against the plaintiff. *Vogelsang v. Patterson Dental Co.*, 53 FEP Cases 1069, 1073, 1989 WL 89951 (D.Minn.1989).

The district court found that Miller met his burden of establishing a prima facie case of discrimination for purposes of defeating the summary judgment motion. *Miller*, Civ. 3–90–127, slip op. at 6. Viewing the facts in the light most favorable to Miller, we reach the same conclusion.[3] First, Miller was clearly a member of the protected class. The Minnesota Human Rights Act protects all persons over the age of majority from age discrimination. Minn.Stat. § 363.01, Subd. 3 (1991). Second, the company does not dispute that Miller was a competent drafter. Finally, Miller presented at least a genuine issue of material fact that he was discharged, and that CertainTeed hired Anderson to do much of the same work which Miller had performed.

The district court next found that CertainTeed had articulated legitimate, nondiscriminatory reasons for its action. *Miller*, Civ. 3–90–127, slip op. at 6. CertainTeed's expansion of its Shakopee plant made it the largest and most productive of its three roofing material plants. The company clearly was warranted in its conclusion that

a second engineer was required at the plant. Both of the company's other plants had at least two engineers. Miller makes no claim that he was an engineer or could operate a CAD machine. Moreover, corporate vice president James Hilyard, who was involved in the decision to upgrade the Shakopee engineering staff, did not even know who held the drafter's job or that person's age. Therefore, CertainTeed has met its burden of articulating a legitimate, nondiscriminatory motive behind its action.

Finally, the district court found that Miller failed to present a genuine issue of material fact that CertainTeed's proffered, nondiscriminatory motive for the termination was mere pretext. *Miller*, Civ. 3–90–127, slip op. at 6. Miller's primary argument as to pretext is that he was told at his termination meeting that he was going to be replaced by a "junior CAD engineer." Accepting this fact as true, which we must, we conclude it does not show that CertainTeed harbored a discriminatory motive. Even assuming "junior CAD engineer" meant that the company intended to hire a younger engineer, that fact is insufficient to demonstrate pretext since Miller was not a qualified engineer. CertainTeed did not merely replace Miller with a younger person. The company transformed Miller's position into an engineering job for which Miller was not qualified.

Miller also argues that his position was singled out for elimination and that he had performed many of the tasks his replacement was hired to perform. These arguments ignore the fact that CertainTeed chose to hire an engineer with a college degree to perform numerous tasks for which Miller was not qualified. Since Miller has failed to raise a genuine issue of

**3.** Miller, citing *Bruss v. Toro Co.*, 427 N.W.2d 17 (Minn.App.1988), contends that establishing a prima facie case of discrimination is sufficient to withstand a summary judgment motion and, therefore, it is inappropriate to address the issue of pretext. We agree with the numerous Minnesota and federal cases which have refused to read *Bruss* so broadly. It is clear that under Minnesota law, a plaintiff who is confronted with an employer's legitimate, nondiscriminatory basis for a termination must rebut this explanation by showing that there is a genuine issue

of material fact that the employer's proffered explanation was merely a pretext for discriminatory intent. *Miller v. Centennial State Bank*, 472 N.W.2d 349, 354–55 (Minn.App.1991); *Albertson v. FMC Corp.*, 437 N.W.2d 113, 116 (Minn.App.1989) (distinguishing *Bruss*); *Rademacher v. FMC Corp.*, 431 N.W.2d 879, 882 (Minn.App.1988); *Shea v. Hanna Mining Co.*, 397 N.W.2d 362, 369 (Minn.App.1986); *Hughlett v. Sperry Corp.*, 671 F.Supp. 635, 637 (D.Minn. 1987); *Matson v. Cargill, Inc.*, 618 F.Supp. 278, 281–82 (D.Minn.1985).

fact that CertainTeed's action was a pretext, summary judgment was proper.

## B. Retaliatory Discharge

■ Miller also claims he was discharged in retaliation for filing a worker's compensation claim, in violation of Minnesota Statute § 176.82. Miller argues he has raised a genuine issue of fact as to retaliatory discharge because the company continually "put off" filing the first report of injury on his claim, and because his supervisor Swenson swore at him and got angry with him when he made requests for worker's compensation benefits. Miller further argues that a coworker reported overhearing Swenson and plant manager Clem Carfrey complaining about Miller's worker's compensation claim and stating that "we'll take care of that!" Finally, Miller argues that the timing of the decision to terminate him coincided with the filing of Miller's first report of injury.

■ Minnesota Statute § 176.82 provides:

Any person discharging or threatening to discharge an employee for seeking worker's compensation benefits or in any manner intentionally obstructing an employee seeking worker's compensation benefits is liable in a civil action for damages incurred by the employee....

Minn.Stat. § 176.82 (1992). Minnesota courts apply the *McDonnell Douglas* analysis to retaliatory discharge claims under § 176.82. *Snesrud v. Instant Web, Inc.*, 484 N.W.2d 423, 427–28 (Minn.App. 1992).

Our analysis mirrors our age discrimination analysis. Miller has presented a prima facie case by showing facts sufficient to raise a genuine issue of material fact that he was terminated for filing a worker's compensation claim. Likewise, we find that CertainTeed has rebutted the inference of discrimination by presenting legitimate, nondiscriminatory reasons for the discharge.

■ Miller's evidence again, however, fails to rebut CertainTeed's legitimate reasons for the discharge. Worker's compensation claims at the roofing plant were not unusual. There were about 300 claims filed at the Shakopee plant between 1986 and 1990. Miller presented no evidence that his claim was processed differently than any other claim. The injury giving rise to his claim occurred four years before his position was eliminated. While the decision to eliminate his job came shortly after the company filed the first report of injury, a claim cannot survive summary judgment merely because an employee is terminated after filing a claim. The employee must demonstrate a causal connection between the claim and the termination. *Snesrud*, 484 N.W.2d at 427–28 (employee failed to rebut legitimate reason for termination even though he was terminated on the same day he filed a worker's compensation claim); 2 A. Larson, Workmen's Compensation for Occupational Injuries and Death, § 68.36(c) at 13–69 (1990). Since Miller failed to show that the proffered reasons for his termination were a pretext and that his termination was caused by the filing of his worker's compensation claim, summary judgment was proper.

## C. Breach of Contract

■ Miller does not contend that CertainTeed made any oral commitments to him regarding his term of service. Rather, Miller argues that a written contract existed to guarantee his employment to the age of sixty-five. Miller bases his contract argument on two employee manuals given him by the company.

Specifically, Miller argues that the CertainTeed Employee Manual states that the company is an Equal Opportunity Employer in terms of hiring and termination. Further, under the heading "policy," the company made the following "pledges:"

1. We will treat you fairly and consistently at all times.
2. We will respect the dignity of each individual.
3. We will recognize the importance of your contribution to our success.
4. We will allow you opportunities, insofar as possible, to advance to positions which best suit your skills and, consist-

ent with company needs, insure your self-development and job satisfaction.

CertainTeed Employee Manual at 7. A second employee manual provides:

> CertainTeed offers its employees a Tuition Assistance Program whereby the company will help pay for work- or degree-related courses at any accredited college, technical, vocational, trade, business or correspondence schools.

CertainTeed and You at 8. The district court found that none of these provisions were sufficiently definite to constitute a valid offer for a unilateral contract. *Miller,* Civ. 3–90–127, slip op. at 8–9.

 Under Minnesota law, the normal employer-employee relationship is at will. An employee is free to leave the job at any time. An employer, in turn, may terminate an employee for any reason, or no reason at all. *Cederstrand v. Lutheran Bhd.,* 263 Minn. 520, 117 N.W.2d 213, 221 (Minn.1962); *Corum v. Farm Credit Serv.,* 628 F.Supp. 707, 712 (D.Minn.1986). The terms of an employee handbook, if sufficiently definite, may alter this at-will relationship by creating an offer for a unilateral contract. *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 627 (Minn.1983). An employee accepts this offer of contract by remaining in his employment with knowledge of the terms of the offer. *Id.* In order to qualify as an offer for a unilateral contract, the manual must state sufficiently definite terms, and must be more than an employer's general statement of policy. *Kulkay v. Allied Cent. Stores, Inc.,* 398 N.W.2d 573, 576 (Minn.App.1986). "The policy must provide reasonably definite terms for a factfinder to interpret and apply in determining whether there has been a breach of the contract arising from the policy." *Id.*

 The CertainTeed employee manuals articulate statements of policy and are not sufficiently definite to form an offer for a unilateral contract. The manuals lack terms sufficient to enable a factfinder to determine whether a breach has occurred. *See Hunt v. IBM Mid Am. Employees Fed. Credit Union,* 384 N.W.2d 853, 857 (Minn. 1986). An employer's statements of policy are just that, statements of policy, and do not form the basis for a contract offer. *Goodkind v. University of Minn.,* 417 N.W.2d 636, 639 (Minn.1988). Therefore, Miller was an at-will employee and CertainTeed was justified in terminating his employment.

### III.

For the foregoing reasons, the judgment of the district court is affirmed.