Darrell RANDALL, Respondent,

v.

NORTHERN MILK PRODUCTS,
INC., Appellant.

No. C8–94–578.

Court of Appeals of Minnesota.

July 19, 1994.

Michael J. Dolan, Alexandria, for appellant.

Steven J. Drummond, Alexandria, for respondent.

Considered and decided by PETERSON, P.J., PARKER, and CRIPPEN, JJ.

## OPINION

PARKER, Judge

Appellant Northern Milk Products, Inc. terminated Darrell Randall's employment after receiving notice that he intended to claim a work-related injury. The employee brought an action against the employer for retaliatory discharge under the Workers' Compensation Act. Minn.Stat. § 176.82 (1992). The trial court entered judgment in favor of the employee. The employer challenges the trial court's findings and conclusion that the employer terminated the employee in retaliation for seeking workers' compensation benefits. We affirm.

## FACTS

Darrell Randall initially began employment with Northern Milk Products, Inc. (NMP) in 1989 as an at-will employee. He was laid off due to lack of work in 1991 and allowed his health insurance coverage to lapse. Randall reapplied for health coverage when recalled to work in November. He was informed that coverage would be effective December 1, 1991.

On Saturday, November 30, 1991, Randall was stacking 50-pound bags of milk product atop a six-foot-high pallet. He testified that he felt a sharp pain in his back. Initially the pain was severe, but he completed his shift believing the pain would eventually subside. He did not report the pain to his supervisor. Randall returned to work on Monday, December 2 and told his supervisor he had injured his back. It is disputed whether he specifically stated he was injured at work on Saturday, or whether he merely said that he was injured. He worked for eight hours on Monday. Randall testified that when he awoke on Tuesday, December 3, the back

pain was severe. He telephoned NMP's receptionist and said that he would not be coming into work. That afternoon, he consulted a chiropractor about his injuries. The chiropractor examined Randall and issued "a return to work at light duty" slip.

NMP's plant manager telephoned Randall at his home that day. Randall testified that the manager was very upset and that he suggested Randall claim the injury under his health insurance coverage. The plant manager testified he was upset because he wanted facts and answers, and that he told Randall the injury would be covered either by private insurance or by worker's compensation, depending on where the injury occurred. After Randall stated that his injury happened at work, the manager told him that employees must meet with the company owner to discuss worker's compensation claims. Randall testified that because he feared the owner would yell at him, he then said he was unsure where the injury happened. A meeting was set up with the company owner for the next morning.

Randall met with NMP's owner the following morning, December 4. Randall handed the plant manager his "return to work at light duty" slip issued by the chiropractor. The NMP manager placed it on the desk without looking at it. The owner asked Randall where the injury happened. According to NMP, Randall initially failed to respond to the question or stated he was uncertain. Randall denied saying he was uncertain. The owner testified he was upset, raised his voice, and explained to Randall the need to control the amount of money spent each year for worker's compensation costs. The owner stated that he was not upset about the worker's compensation claim, but rather because the employee intended to file the claim even if he was unsure whether the injury was work-related. The NMP owner again asked Randall where the injury occurred. The parties agree that Randall then stated he was injured at work. The owner responded by immediately firing him. The separation notice stated he was fired for dishonesty.

Randall filed for worker's compensation benefits in February 1992. NMP had not filed a first report of injury at that time. NMP's workers' compensation insurance carrier settled the claim, stipulating that Randall suffered a work-related injury. Randall brought an action against NMP for retaliatory discharge pursuant to Minn.Stat. § 176.82 (1992). The trial court entered judgment in favor of Randall. NMP appeals from the trial court's factual findings and legal conclusions.

## ISSUES

I. Does the evidence reasonably support the trial court's factual findings?

II. Does the evidence support a legal conclusion that the employee was discharged by his employer in retaliation for seeking workers' compensation benefits?

## DISCUSSION

### I.

Appellant NMP argues that the trial court's factual findings are unsupported by the evidence. NMP further argues that the employee's claims are not believable based on the sheer weight of the evidence. In actions tried to the court without a jury, findings of fact based on oral and documentary evidence shall not be set aside unless clearly erroneous, and due regard is given to the opportunity of the trial court to judge the credibility of witnesses. Minn.R.Civ.P. 52.01 (1994). Clearly erroneous means "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Northern States Power Co. v. Lyon Food Prod. Inc.*, 304 Minn. 196, 201, 229 N.W.2d 521, 524 (1975).

Randall testified that while stacking 50–pound bags of NMP's milk product, he felt a sharp pain in his back. The injury occurred on Saturday, and the pain continued throughout the day. No evidence suggests he engaged in activities on Sunday that would produce or aggravate the back injury. Randall was sore when he awoke on Monday, but he worked an eight-hour shift. On Tuesday, the pain was severe and he consulted a chiropractor. The chiropractor's examination disclosed injuries to the lumbar region

consistent with those incurred while lifting. Randall testified he had told his supervisor two days after the injury that he suffered a possible work-related back injury. Though the supervisor disputed this testimony, the trial court found that either way, NMP was on notice of a work-related injury. Evidence supports the finding that Randall suffered a work-related injury and that his employer, NMP, was aware of the injury.

Evidence also supports the trial court's finding that Randall's testimony was credible. Randall admitted telling the plant manager he was uncertain where his injury occurred in order to avoid a confrontation with the NMP owner. The owner testified that upon questioning during the December 4 meeting, Randall failed immediately to say where the injury occurred, but ultimately said that it occurred at work. The trial court found that Randall could have been less ambivalent regarding the origin of his injury, but that he nevertheless proved his claim by a preponderance of the evidence. While it is true that Randall knew that his health insurance coverage had lapsed when he injured his back, this fact alone does not compel an inference that he fabricated a workers' compensation claim. Moreover, independent evidence supports his assertion that the injury was work-related. The trial court heard conflicting testimony and afforded greater credibility to evidence presented by the employee. The trial court's credibility determinations will be treated with due deference and its factual findings are reasonably supported by the evidence.

## II.

Appellant NMP challenges the trial court's judgment imposing damages for retaliatory discharge under Minn.Stat. § 176.82 (1992). Whether factual findings support legal conclusions is a question of law for the reviewing court to determine. *Donovan v. Dixon*, 261 Minn. 455, 460, 113 N.W.2d 432, 435 (1962). The appellate court conducts an independent review of the record to determine if the lower court made the proper legal conclusions. *Jadwin v. Minneapolis Star & Tribune Co.*, 367 N.W.2d 476, 483 (Minn. 1985).

The employer's liability for retaliatory discharge was established pursuant to Minn.Stat. § 176.82 (1992). This statute provides in relevant part:

Any person discharging or threatening to discharge an employee for seeking workers' compensation benefits * * * is liable in a civil action for damages incurred by the employee.

Minn.Stat. § 176.82. Retaliatory discharge under this statute is demonstrated by the three-step burden-shifting formula articulated in *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 802–805 93 S.Ct. 1817 1824–25, 36 L.Ed.2d 668 (1973). *Snesrud v. Instant Web, Inc.*, 484 N.W.2d 423, 427 (Minn.App. 1992) *pet. for rev. denied* (Minn. June 17, 1992). This test provides that:

1. The employee must first establish a prima facie case of retaliatory discharge;
2. The burden then shifts to the employer to articulate legitimate reasons for the discharge; and, if the employer does so,
3. The employee must then establish that the employer's proffered reasons for the discharge are pretextual.

*Graham v. Special Sch. Dist. No. 1*, 472 N.W.2d 114, 119 n. 7 (Minn.1991). Once the employer articulates a legitimate reason for the discharge, the employee must show by a preponderance of the evidence that the discharge was for an impermissible reason. *Phipps v. Clark Oil & Refining Corp.*, 408 N.W.2d 569, 572 (Minn.1987).

NMP concedes that Randall presented sufficient evidence to establish a prima facie case of retaliatory discharge. NMP's proffered reason for discharging Randall is dishonesty, based on the fact that the employee offered two inconsistent explanations regarding where his back injury occurred. Specifically, Randall first stated that the injury happened at work but later manifested uncertainty after NMP's plant manager questioned him.

Dishonesty may be a legitimate reason for terminating employment in some circumstances. Under Minnesota law, an at-will employee may be discharged for any reason or for no reasons at all. *Miller v. CertainTeed Corp.*, 971 F.2d 167, 172 (8th Cir.1992) (citing *Cedarstrand v. Lutheran Bhd.*, 263 Minn. 520, 532, 117 N.W.2d 213, 221 (1962)). As an at-will employee, Randall may properly be discharged for dishonest

behavior, for instance for filing a false workers' compensation claim. On the other hand, dishonesty is not a legitimate reason for terminating employment if this reason is a pretext for discharging the employee in retaliation for seeking workers' compensation benefits.

On appeal, NMP contends that Randall failed to demonstrate pretext by a preponderance of the evidence because he has not shown a causal link between the discharge and the subsequent workers' compensation claim. In a retaliatory discharge action, the employee must demonstrate a causal connection between the workers' compensation claim and the employment termination. *Miller*, 971 F.2d at 171 (citing *Snesrud*, 484 N.W.2d at 427–28). In this case, causation is demonstrated by the sequence of events leading to Randall's discharge.

Randall injured his back while working for NMP. He told his supervisor he was injured. The plant manager suggested he claim the injury under his health insurance coverage, and also told Randall that employees who file workers' compensation claims must meet with the company owner to discuss their claims. During that meeting, the plant supervisor placed Randall's "return to work at light duty" slip on his desk without looking at it. NMP's owner asked Randall where the injury occurred and, by his own admission, informed Randall about the need to control the amount of money spent on workers' compensation costs. Randall told his employer he was hurt on the job, and he was then immediately fired.

This sequence of events allows the factfinder to infer the necessary causal link to showing Randall was fired, not for dishonesty, but because he intended to file a workers' compensation claim. This conclusion is supported by the fact that NMP never inquired about the cause of Randall's injury and never contested the finding of a work-related injury. In addition, NMP disregarded proper workers' compensation statutory procedures.

An employer may not subjectively assess the validity of an employee's workers' compensation claim and use self-help as punishment without exposure to a retaliatory discharge suit. The legislature specifically intended that workers' compensation claims

shall be decided on the merits, Minn.Stat. § 176.001 (1992), and the Workers' Compensation Act provides an impartial forum for adjudicating disputes. *See* Minn.Stat. § 176.371 (1992) (describing compensation judge's duties). Randall claimed he suffered a work-related injury, and NMP accused him of lying about where the injury occurred. The company did not provide the employee with written notice denying liability as required by Minn.Stat. § 176.221, subd. 1 (1992). NMP also failed to file a first report of injury as required by Minn.Stat. § 176.231 (1992). By summarily terminating employment, the employers engaged in self help and utterly disregarded the procedures established to adjudicate workers' compensation claims on the merits. This further evidences retaliatory discharge.

## DECISION

The trial court's factual findings are reasonably supported by the evidence. These findings support the conclusion that NMP discharged Darrell Randall in retaliation for his stated intent to file a workers' compensation claim, and that NMP's proferred reason for the discharge is pretextual under Minn. Stat. § 176.82.

**Affirmed.**