Byrdie K. **REIERSON,** Relator,

v.

CITY OF **HIBBING,** Respondent.

No. C8–00–1871.

Court of Appeals of Minnesota.

June 19, 2001.

Mitchell John Brunfelt, John M. Colosimo, Colosimo, Patchin, Aronson & Kearney, Virginia, for relator.

Patricia Ytzen Beety, League of Minnesota Cities, St. Paul, for respondent.

Considered and decided by TOUSSAINT, C.J., CRIPPEN and HANSON, JJ.

## OPINION

TOUSSAINT, Chief Judge.

Relator Byrdie Reierson seeks review of the Hibbing City Council's decision to terminate her employment. Relator contends that (1) the decision to terminate her employment was unfair and lacked due process because the city improperly relied on hearsay and other vague comments to support its decision; (2) there was insufficient evidence in the record to support its decision; (3) she was not given the documents that she was entitled to under the Data Practices Act; and (4) the city council did not make written findings. We affirm.

## FACTS

In October 1993, the City of Hibbing (the "city") hired relator Byrdie Reierson as an administrative assistant. Relator signed an employment contract, which provided that she was an at-will employee, and as such, could be terminated "at any time, for any reason." The contract also provided that the city would conduct an annual review of relator's performance; until the year 2000, this review was not conducted. This contract was renewed in 1996 and 1997. In 1998, relator signed a new contract, where her position was changed to "confidential administrative executive secretary." This contract also provided that relator could be terminated "at any time, for any reason."

In July 1999, John Tourville became the new city administrator and relator's direct supervisor. From July 1999 through August 2000, Tourville evaluated relator's performance. According to Tourville, he was disappointed in relator's performance,

and he warned her about her productivity; Tourville did not document this warning. Tourville also claims that the interim city attorney warned relator about doing personal work on city time, but this warning was not documented either. In fact, relator's personnel record does not show that the quality of her work or her work ethic was poor. Also, relator's personnel record fails to show that she was reprimanded for her poor performance or that co-workers complained of her work.

In August 2000, Tourville prepared relator's annual performance evaluation. Relator's overall rating in the performance evaluation was "needs improvement." The evaluation indicated that relator (1) completed agendas and minutes at the last minute, and that the June minutes were not completed in time to go out with the July agenda; (2) neglected the personnel files many were missing and most were inadequately maintained; (3) did not deliver phone messages on time and sometimes failed to deliver them altogether; (4) failed to complete assignments that she was ordered to do, such as reviewing existing files and updating the city code changes on the city's web page; and (5) had difficulty supporting some of the other departments and staff due to her adversarial attitude.

Tourville further indicated that

[relator] has to be more accountable for her actions. She has not told the truth on several occasions to cover for her lack of follow through on various tasks. Knowing that she is capable of being less than truthful about her actions makes it extremely difficult to confide in her as a Confidential Administrative Executive Secretary regarding proprietary issues for the City of Hibbing and HEDA.

In addition, Tourville listed comments made by a council member, various department heads, and members of the secretarial staff. The common complaints were that (1) relator was not dependable or loyal; (2) there was no confidence in her as an employee; (3) relator did not follow instructions; (4) she failed to complete tasks in a timely manner; and (4) relator had an abrasive attitude and poor work quality.

As a result of this evaluation, on August 14, 2000, Tourville sent relator a letter informing her that she was being placed on paid leave pending the city council's approval of the findings of the performance evaluation. Relator hired an attorney, who sent a letter to Tourville requesting to know the reasons for this action. On September 1, 2000, relator, her attorney, Tourville, and the Hibbing City attorney met to discuss the evaluation.

On September 5, 2000, the city council held a closed meeting to address relator's performance evaluation. Relator and her attorney were present at that meeting. Tourville recommended that relator be terminated, relying on the reasons articulated in his evaluation. Relator, through her attorney, responded to Tourville's comments. Her attorney explained that relator's personnel file was "clean." Specifically, he noted that any complaints of her performance through her seven years of employment, including those complaints noted by Tourville, were undocumented. In addition, he stated that relator should have been given an opportunity to improve her conduct. After relator's response (through her attorney), she was asked to leave the room so that the council could make its decision.

After relator and her attorney left, the council raised their concern about the fact that relator's personnel file was void of any complaints or evaluations. Tourville defended his recommendation to terminate relator by referencing additional evidence. Tourville claimed that the interim adminis-

trator had talked to relator about the impropriety of doing personal work on work time; he claimed that this fact was documented but not in relator's personnel file. Moreover, he claimed that he had documentation about the fact that people had complaints to the prior administrator about relator and he did nothing about it; he acknowledges that he did not keep this documentation in relator's personnel file. Relator was not privy to this information. The city council unanimously decided to terminate relator. On October 29, 2000, relator filed a writ of certiorari.

## ISSUE

Was the Hibbing City Council's decision to terminate relator arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it?

## ANALYSIS

 Relator challenges the city council's decision to terminate her employment. Our review on writ of certiorari is limited to an inspection of the record to determine the propriety of the city council's jurisdiction and procedures and, with respect to the merits, to determine whether its decision was arbitrary, oppressive, unreasonable, fraudulent, or unsupported by evidence or applicable law. *Dietz v. Dodge County*, 487 N.W.2d 237, 239 (Minn.1992). As a reviewing court, we will not retry the facts or make credibility determinations. *Senior v. City of Edina*, 547 N.W.2d 411, 416 (Minn.App.1996). The decision will be upheld if the city council "furnished any legal and substantial basis for the action taken." *Id.* (citation omitted).

 Relator claims that the record which the city council relied on in deciding to terminate her employment is fraught with unfairness and procedural irregularities, and therefore, the city council's decision was clearly unreasonable and arbitrary. In addition, relator claims that her due-process rights were violated because the city maintained a separate personnel file and she was denied its contents until after the city council decided to terminate her employment. Specifically, relator claims that the decision was unreasonable and arbitrary because (1) her personnel record was "clean"; (2) the evidence relied upon by the council was hearsay evidence, namely, comments made by seven other city employees; (3) until the day of the city council meeting, she was not aware that the three incidents relied on by Tourville were the reasons for his decision to recommend her termination; (4) it was improper for the city to use as a basis for her termination alleged incidents that occurred a year or more before the use of disciplinary action was imposed; and (5) the city council did not issue written findings for its decision to terminate relator. We find these claims to be without merit.

It is well-established law that an at-will employee can be fired for any reason, or no reason at all. *Randall v. Northern Milk Products, Inc.*, 519 N.W.2d 456, 459 (Minn.App.1994). Here, relator and the city entered into an employment contract that provided:

> Nothing in the agreement shall prevent, limit or otherwise interfere with the right of the Hibbing City Council to terminate the services of R[e]ierson *at any time, for any reason(s)*, subject only to the provisions of this Agreement.

(Emphasis added). This language clearly indicates that relator was an at-will employee and could be fired for any reason. Accordingly, relator's claim that her termination was unreasonable and arbitrary is without merit.

 In addition, as an at-will employee, relator had no property interest in her job;

thus, she was not entitled to due process. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 578, 92 S.Ct. 2701, 2710, 33 L.Ed.2d 548 (1972). Accordingly, relator's claim that her due-process rights were violated is also without merit. Based on these facts and the existing law, we conclude that the city council's decision to terminate relator was not "arbitrary, oppressive, unreasonable, fraudulent, or unsupported by evidence or applicable law."

## DECISION

Because relator was an at-will employee, the City of Hibbing could terminate her employment for any reason and was not required to afford her any due process.

**Affirmed.**