*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1017**

Bill Creger,
Appellant,

vs.

City of Cambridge,
Respondent.

**Filed May 6, 2024**
**Affirmed**
**Smith, John, Judge[*]**

Isanti County District Court
File No. 30-CV-22-428

Philip G. Villaume, Jeffrey D. Schiek, Villaume & Schiek, P.A., Bloomington, Minnesota
(for appellant)

Jessica E. Schwie, Kennedy & Graven, Chartered, Minneapolis, Minnesota (for
respondent)

Considered and decided by Cochran, Presiding Judge; Segal, Chief Judge; and

Smith, John, Judge.

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

**SMITH, JOHN**, Judge

We affirm the district court's grant of summary judgment because, based on the undisputed evidence, there was no causal connection between appellant's termination from employment and his allegedly protected conduct.

## FACTS

The following facts are based on the record, viewed in the light most favorable to Creger. In January 2021, appellant Bill Creger began employment as a maintenance worker for respondent City of Cambridge. Creger was subject to a 12-month "learning and evaluation period," during which time he could be discharged at the "sole discretion" of the city.

In April 2021, Creger and another city employee were sitting in a city-owned vehicle. Creger alleges that the other city employee lit a cigarette in the vehicle and continued to smoke after Creger asked them to stop. Creger's supervisor received a complaint about the smoking incident from a third employee; the supervisor then approached Creger to discuss the issue.

In July 2021, the city completed a six-month evaluation of Creger. Creger's performance was determined to be unsatisfactory in three of seven categories: dependability, initiative, and flexibility. The deficiencies had previously been discussed between Creger and his supervisor and his supervisor, following the existing city policy, did not share the evaluation report itself with Creger.

On October 1, 2021, Creger injured his foot at work. Creger properly filed a first report of injury (FRI) the next workday. Creger received a letter from the League of Minnesota Cities Insurance Trust acknowledging its receipt of the FRI. Creger did not request, and did not receive, workers' compensation benefits for the injury.

Sometime in September or October, supervisors at the city discussed potentially terminating Creger's employment. This resulted in Creger's supervisor submitting a written recommendation to discharge Creger dated October 13, 2021. The letter stated that Creger's "issues have started to erode the moral[e] of the other Public Works Staff and it is for this reason I am recommending termination."

On October 26, 2021, Creger was placed on administrative leave and notified that the city council would be voting on the recommendation that he be discharged from employment. The termination of Creger's employment was approved on November 1. On November 4, the city sent Creger a letter notifying him of his termination. In the letter, the city stated that Creger had been terminated because of his continued failure to meet performance expectations in the three areas of deficiency and because of his inability to get along with his coworkers.

In July 2022, Creger filed suit against the city claiming retaliatory discharge in violation of the Minnesota Workers' Compensation Act (WCA), *see* Minn. Stat. § 176.82, subds. 1-2 (2022), along with reprisal and retaliation in violation of the Minnesota Whistleblower Act, Minn. Stat. § 181.932 (2022). The city filed a motion for summary judgment on both counts.

The district court granted the motion for summary judgment against Creger. The district court reasoned that Creger did not present evidence to show pretext for his discharge under the WCA or that he engaged in protected conduct under the whistleblower act.

## DECISION

We review a district court's grant of summary judgment de novo. *Hanson v. Dep't of Nat. Res.*, 972 N.W.2d 362, 371 (Minn. 2022) (citing *Henson v. Uptown Drink, LLC*, 922 N.W.2d 185, 190 (Minn. 2019)). Creger asserts that the district court erred when it determined as a matter of law that (1) he could not meet his burden to show pretext under the WCA, and (2) he could not establish a prima facie case under the whistleblower act because his conduct did not constitute a protected report.

## I.

Creger argues that there is a causal connection for his WCA claim based on timing alone and that the district court erred by finding that he could not meet his burden to show pretext under the WCA. *See* Minn. Stat. § 176.82, subd. 1.

Without direct evidence of retaliation, retaliatory discharge claims under the WCA are analyzed under the *McDonnell Douglas* framework. *Randall v. No. Milk Prods., Inc.*, 519 N.W.2d 456, 459 (Minn. App. 1994) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)); *see also Hubbard v. United Press Int'l, Inc.* 330 N.W.2d 428, 444 (Minn. 1983) (holding that *McDonnell Douglas* framework is applicable to retaliation claims in Minnesota). At the first step, the plaintiff-employee has the burden of introducing evidence that establishes a prima facie case. *Randall*, 519 N.W.2d at 459. To establish a

prima facie case involving alleged retaliatory discharge, "an employee must establish: (1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two." *Hubbard*, 330 N.W.2d at 444.

At the second step, the "burden then shifts to the employer to articulate legitimate reasons for the discharge." *Randall*, 519 N.W.2d at 459 (quotation omitted). "Once the employer articulates a legitimate reason for the discharge, the employee must show by a preponderance of the evidence that the discharge was for an impermissible reason." *Id.* In other words, at the third step the employee must show "that the employer's stated reason for its action was more likely than not pretextual." *Schmitz v. U.S. Steel Corp.*, 831 N.W.2d 656, 671 (Minn. App. 2013), *aff'd*, 852 N.W.2d 669 (Minn. 2014). To prove pretext, "the employee must do more than show that the employment action was ill-advised or unwise, but rather must show that the employer has offered a phony excuse." *Meads v. Best Oil Co.*, 725 N.W.2d 538, 542-43 (Minn. App. 2006) (quotation omitted) (determining issue of pretext in hiring decision for claim under the Minnesota Human Rights Act), *rev. denied* (Minn. Feb. 20, 2007).

Creger argues that there is a causal connection because the timing was "instantaneous." Creger also argues that the city's legitimate reason is pretextual because the city treated other employees differently and because the city's stated reason is unfounded.

In this case, we are not persuaded that there is a genuine issue of material fact regarding the existence of a sufficient causal connection between Creger filing the FRI and his termination from employment. We note that some cases have stated in other contexts

5

that close temporal proximity is sufficient to show causal connection. *See, e.g., Hubbard*, 330 N.W.2d at 444-45 (determining a causal connection when discharged from employment two days after service of complaint in Minnesota Human Rights Act lawsuit); *Hanson*, 972 N.W.2d at 374 & n.18 (determining causal connection in whistleblower case based on close temporal proximity).

Creger successfully filed his FRI on October 4. Creger received notice that the report had been received soon after. The written letter recommending Creger's termination was dated October 13. The city sent Creger notice on November 4 of his termination by the city council due to his unimproved performance deficiencies dating back to July. In addition, the record reflects that Creger's supervisor helped Creger complete the FRI correctly. Despite temporal proximity, there is not sufficient evidence to create a genuine issue of material fact as to whether the was a sufficient causal connection between the filing of the FRI and Creger's termination. Therefore, Creger has not established a prima facie case and the district court did not err by granting summary judgment against Creger. Even if we determined that there is a causal connection, the district court did not err by granting summary judgment. Creger has not sufficiently alleged facts to create a genuine issue of material fact that the city's legitimate reason for his discharge was a pretext.

Pretext may be proven through differential treatment of similarly situated employees. *See Hoover v. Northwest Private Mortg. Banking*, 632 N.W.2d 534, 546-49 (Minn. 2001); *see also Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 956 (8th Cir. 2012). "At the pretext stage, the test for determining whether employees are similarly situated is a rigorous one" and Creger must show that he and the other employees were "similarly

6

situated in all relevant respects" including that the misconduct "must be of comparable seriousness." *Bone*, 686 F.3d at 956 (quotation omitted). All but one of the employees that Creger urges this court to compare him against were not in a probationary period of employment. Further, the other probationary employee did not have as many documented instances of mistakes on the job as Creger. These employees are not "similarly situated in all relevant respects" to Creger, and do not support that the city's stated reason is a pretext. *Id.* (quotation omitted).

Further, there is no genuine issue of material fact as to whether the city's reason for discharge is unfounded. Creger does not dispute the occurrence of the events listed in his six-month evaluation. Creger also does not refute that the cumulative effect of mistakes can justify the discharge of an employee.

Finally, temporal proximity alone does not undermine the justification given by the city for terminating Creger's employment. *See Hubbard*, 330 N.W.2d at 445-46.

In sum, the district court did not err by granting summary judgment against Creger on his claim under the WCA. Creger did not submit evidence to create a genuine issue of material fact regarding existence of a sufficient causal connection between his filing of the FRI and his termination from employment. Additionally, Creger has not submitted evidence to create a genuine issue of material fact that the city's legitimate reason for his discharge is pretextual.

7

## II.

Creger next argues that the district court erred by finding that he did not establish a prima facie case because he did not submit sufficient evidence to establish that he engaged in statutorily protected conduct under the whistleblower act. *See* Minn. Stat. § 181.932.

Claims brought under the Minnesota Whistleblower Act are also analyzed under the *McDonnell Douglas* framework if there is no direct evidence of retaliation. *Hanson*, 972 N.W.2d at 374. In a whistleblower retaliation claim, the employee first needs to present a three-element prima facie case: "(1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two." *Moore v. City of New Brighton*, 932 N.W.2d 317, 323 (Minn. App. 2019) (quoting *Hubbard*, 330 N.W.2d at 444), *rev. denied* (Minn. Oct. 15, 2019). For a whistleblower claim "we have never mandated anything beyond close temporal proximity to establish a causal connection for an employee's prima facie case." *Hanson*, 972 N.W.2d at 374 n.18.

Assuming without deciding that Creger's actions around the smoking incident in April 2021 constitute protected conduct, Creger still has not sufficiently alleged facts to create a genuine issue of material fact to establish a prima facie case. Creger did not submit sufficient evidence to create a genuine issue of material fact regarding existence of a causal connection between the alleged report of the smoking incident and his termination from employment. Creger started working for the city in January 2021 with a 12-month probationary period. The smoking incident occurred in April 2021. Creger was placed on administrative leave in late October and then terminated the next week. Six months is too large of a time gap during a 12-month probationary period for there to be "close temporal

proximity" between Creger's alleged report of smoking in a city vehicle and the termination of his employment. Therefore, the district court did not err by granting summary judgment in favor of the respondent.

**Affirmed.**